727 F.2d 1161
 234 U.S.App.D.C. 62
 CENTER FOR SCIENCE IN THE PUBLIC INTEREST, et al.
v.
Donald T. REGAN, Secretary of the Treasury, et al.,
Wine Institute, Appellant.
CENTER FOR SCIENCE IN THE PUBLIC INTEREST, et al.
v.
Donald T. REGAN, Secretary of the Treasury, et al.,
Distilled Spirits Council of the United States, Inc., Appellant.
CENTER FOR SCIENCE IN THE PUBLIC INTEREST, et al.
v.
Donald T. REGAN, Secretary of the Treasury, et al., Appellants,
Wine Institute, et al.
 Nos. 83-1419 to 83-1421.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 26, 1983.
Decided Feb. 7, 1984.
As Amended March 1, 1984.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 82-00610).
 Michael F. Hertz, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), and Marleigh D. Dover, Atty., Dept. of Justice, Washington, D.C., were on the brief, for Regan, Secretary of the Treasury, et al., appellants in 83-1421 and appellees in 83-1419 and 83-1420. Robert E. Kapp, Atty., Dept. of Justice, Washington, D.C., entered an appearance for Regan, Secretary of the Treasury, et al.
 Paul L. Friedman, Washington, D.C., with whom Charles N. Brower, Robert G. Berger, and Lawrence B. Gotlieb, Washington, D.C., were on the brief, for Distilled Spirits Council of the U.S., Inc., appellant in 83-1420 and appellee in 83-1419 and 83-1421.
 Arnold M. Lerman, Roger M. Witten, and Kevin Eugene Smith, Washington, D.C., were on the brief for Wine Institute, appellant in 83-1419 and appellee in 83-1420 and 83-1421.
 Bruce Silverglade, Washington, D.C., with whom Mitchell Zeller, Washington, D.C., was on the brief, for Center for Science in the Public Interest, appellee in 83-1419, 83-1420 and 83-1421.
 Walter G. Ricciardi, Washington, D.C., entered an appearance for Banfi Products Corp., appellee in 83-1419, 83-1420 and 83-1421.
 Before WRIGHT and TAMM, Circuit Judges, and MacKINNON, Senior Circuit Judge.
 Opinion for the Court filed by Senior Circuit Judge MacKINNON.
 Dissenting opinion filed by Circuit Judge J. SKELLY WRIGHT.
 MacKINNON, Senior Circuit Judge:
 
 
 1
 This case involves a rule and two subsequent rescissory rules. The district court held the first rescissory rule to be invalid because the agency did not provide an adequate explanation for the rescission of the initial rule. After the present appeals were taken from the decision of the district court, the agency undertook further rulemaking and promulgated a second, qualified rescission. We conclude that the second rescission eviscerates these appeals, which we hereby dismiss.
 
 I.
 
 2
 On June 30, 1980, the Department of the Treasury promulgated a rule, T.D. ATF-66 (No. 66) that required the labels on containers of alcoholic beverages to list the ingredients, effective January 1, 1983. 45 Fed.Reg. 40538 (1980). The comprehensive labeling rule was promulgated pursuant to the Department's statutory authority to prescribe regulations designed to provide consumers with adequate information concerning the contents of alcoholic beverages. Federal Alcohol Administration Act (FAAA), 27 U.S.C. Sec. 205(e) (1976). On November 6, 1981, the Department, following prior notice of rulemaking and public opportunity to comment, issued T.D. ATF-94 (No. 94), which rescinded T.D. ATF-66 and its labeling requirement. 45 Fed.Reg. 55093 (1981).
 
 
 3
 The Center for Science in the Public Interest (Center), et al., brought suit complaining of the rescission, and obtained a favorable ruling from the district court on February 8, 1983. The main thrust of the court's ruling was that the rescission by the Department was invalid for failure to comply with the Administrative Procedure Act, 5 U.S.C. Secs. 551-706 (1976 & Supp. V 1981): the district court ruled that the agency had not provided an adequate explanation for its decision rescinding No. 66, and had given undue weight to "cost" concerns. The court required Treasury within thirty days thereof to set a new date, not later than one year from the date of the order, for No. 66 to become effective. Center for Science in the Public Interest, et al. v. Regan, Civ. A. No. 82-00610 (D.D.C. Feb. 8, 1983). The Department complied with the court's order in announcing that No. 66 would become effective on February 8, 1984, subject to possible judicial or administrative intervention. 48 Fed.Reg. 10309 (1983).
 
 
 4
 That part of the district court's decision which ordered the Department to fix the date for the effectiveness of the comprehensive labeling requirement as not later than February 8, 1984, was appealed by the Department to this Court. The Department contended that this amounted to a usurpation of its statutory authority. This was the only issue raised on appeal by the Department, which took no appeal from the remainder of the court decision, i.e., that Treasury's rescission of No. 66 had been inadequately explained and had given undue weight to costs.
 
 
 5
 However, the Wine Institute, an intervenor before the district court, appealed the substance of the district court's determination that the rescission had been inadequately explained. After the Department and the Wine Institute had appealed, the Distilled Spirits Council of the United States (Council) was authorized to intervene for the purpose of appealing the court's earlier judgment, and did so.[1]
 
 
 6
 On August 31, 1983, a Motions Panel of this Court (Wald, J., and Ginsburg, J.) stayed the effective date of No. 66, which Treasury had set at February 8, 1984, without prejudice to action by the merits panel.
 
 
 7
 While the foregoing described appeals were pending, the Department undertook a new administrative initiative. On June 17, 1983, Treasury gave notice of additional proposed rulemaking on the entire subject of ingredient disclosure. 48 Fed.Reg. 27782 (1983). Comments were solicited on all phases of the proposed regulation, and particularly on the use of FD & C Yellow Dye No. 5, and on the lead time for implementing a new regulation should Treasury decide to issue one. After considering all comments filed on the proposed rule and on the earlier rules Nos. 66 and 94, the Treasury on October 6, 1983, promulgated a new rule, T.D. ATF-150 (No. 150). 48 Fed.Reg. 45549 (1983). The new rule rescinded No. 66, but required the labeling of FD & C Yellow Dye No. 5 by October 6, 1984. The Department found no other ingredient that posed a special health problem, or that justified a label requirement, but stated that the agency would consider on a case-by-case basis any ingredient alleged to cause a potential problem. Id.
 
 
 8
 The Department, the Wine Institute, and the Council contend that the Center's case challenging No. 94 is now moot because No. 94 has been superseded by No. 150 and no longer has any legal effect. Relying on United States v. Munsingwear, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), those parties have moved the Court to dismiss this appeal as moot, and to vacate the judgment of the district court and remand the case with instructions to dismiss the complaint.
 
 II.
 
 9
 In ruling on these motions, we begin with the established proposition that it is not improper for an agency to engage in new rulemaking to supersede defective rulemaking. See Action on Smoking and Health v. CAB, 713 F.2d 795, 798-99, 802 (D.C.Cir.1983) (Ash II ). Under any conceivable disposition of the instant appeals, it is clear that an ultimate determination of the rights and obligations of the parties concerning ingredient labeling can emerge only upon consideration of the validity of T.D. ATF-150. That is unquestionably a matter for the district court initially, because a determination of the validity of No. 150 necessarily requires review of the new administrative record. Most of the issues presented in these appeals are not necessarily pertinent to examination of the second rescission,[2] and may well prove irrelevant in that context.
 
 
 10
 The subject matter of these appeals, T.D. ATF-94, no longer has any force, and the controversy surrounding it has been mooted. Any further judicial pronouncement on No. 94 would be purely advisory. Accordingly, we dismiss the appeals. In addition, we vacate that part of the district court decision that required No. 66 to be made effective within one year.
 
 A. The Mandatory Effective Date
 
 11
 The Department appealed only from that portion of the district court order providing:
 
 
 12
 [T]hat within thirty (30) days of the date of this order the [Treasury] Department shall announce the new date upon which T.D. ATF-66 will be mandatory, the new date not to be any later from one year from the date of this order.
 
 
 13
 Center for Science in the Public Interest, et al. v. Regan, Civ. A. No. 82-00610 (D.D.C. Feb. 8, 1983) (emphasis added). This part of the judgment is now moot. The mandatory effective date, as prescribed by the agency within the court's order, cannot possibly have any future effect. The Department complied with that part of the court's order when it announced that No. 66 would become effective on February 8, 1984, unless further judicial or administrative action intervened. As a result of its new rulemaking proceedings, the Department promulgated No. 150: that rule became effective on November 5, 1983, and thereby displaced both prior rules. As such, No. 150 constitutes future administrative action of the type that Treasury had referred to in its own order complying with the order of the district court. See 48 Fed.Reg. 10309 (1983).
 
 
 14
 As we previously emphasized, the Department was legitimately empowered to initiate further rulemaking to correct the deficiencies that the district court found in No. 94. See Ash II, supra; cf. Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., --- U.S. ----, ----, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (agency has authority to reconsider past rulemakings by appropriate procedures). The district court was without power to preclude such agency reconsideration, and its order cannot be understood to have done so.[3] Whatever obligation Treasury had to reinstitute No. 66 was subject to the agency's discretion to take appropriate further administrative action.
 
 
 15
 Accordingly, the district court's order that, in effect, No. 66 be made effective no later than February 8, 1984, no longer has any prospective force. We therefore vacate that portion of the district court order. We do so in order to make it clear that the Treasury is under no present obligation to make No. 66 effective.
 
 
 16
 B. The Remainder of the District Court Decision
 
 
 17
 The remaining portions of the district court opinion concern the adequacy of Treasury's explanation of No. 94, and related issues. The Department did not appeal as to these aspects of the decision, though the Wine Institute and the Council have urged this Court to hold the agency's explanation accompanying No. 94 to have been adequate.
 
 
 18
 There is no reason for this Court to take any action whatsoever with respect to the remainder of the district court decision. Treasury did not appeal from it. The Wine Institute and the Council can no longer complain that the court's ruling has injured them, because the invalidated rule, No. 94, has been superseded by subsequent agency action. See Iron Arrow Society v. Heckler, --- U.S. ----, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983) (dismissing case as moot when an appellate decision could not possibly accord appellant relief from the wrong of which it complains); Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). No. 94 is a dead letter, and cannot be revived in favor of intervenors. Any appellate pronouncement on the validity of that rule would be meaningless.
 
 
 19
 Nor should the remaining portion of the district court decision be vacated. Appellants cannot accomplish through a motion to vacate that which they could not achieve through a direct appeal. Each of the appellants urges the Court to remand to the district court, with instructions to vacate the district court decision and dismiss the complaint, in accordance with United States v. Munsingwear, supra.[4] The purpose of the order in Munsingwear, however, was to "clear[ ] the path for future relitigation of the issues between the parties [and to] eliminate[ ] a judgment, review of which was prevented through happenstance." 340 U.S. at 39-40, 71 S.Ct. at 106-107. In the case at bar, review was prevented, not by "happenstance," but by the deliberate action of the losing party before the district court, the Treasury. Circuit courts have recognized that in such a case, the district court should not be ordered to vacate its decision. Ringsby Truck Lines v. Western Conference of Teamsters, 686 F.2d 720, 721-23 (9th Cir.1982); Cover v. Schwartz, 133 F.2d 541, 546-47 (2d Cir.), cert. denied, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1942); accord 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice p 0.416 at 543-44 (2d ed. 1983); cf. CFTC v. Board of Trade, 701 F.2d 653, 658 (7th Cir.1983) (preliminary district court decision need not be vacated). When the appellant, here the Department, causes the dismissal of its own appeal, it "is in no position to complain that [its] right of review of an adverse lower court decision has been lost." Ringsby, supra, 686 F.2d at 722. Conversely, the prevailing party, here the Center, ought to be left in the same position as if no appeal had been taken.
 
 
 20
 For the foregoing reasons, the Court dismisses the intervenors' appeals as to the remainder of the district court decision, i.e., the invalidation of the rescission. We do not vacate that part of the decision, but let it stand as is. We express no opinion whatsoever as to the merits of the district court's analysis and conclusions concerning that issue.[5]
 
 III.
 
 21
 Our disposition of these appeals clears the way for future litigation concerning the ingredient labeling controversy. The Department's promulgation of No. 150, which rescinded No. 66, presents a new case. The Treasury's most recent action was the product of a third rulemaking proceeding; it is a different regulation, containing on its face reasoning not previously articulated by the agency as its policy. In addition, No. 150 contains substantive provisions different from those of its predecessors. Whether these differences give rise to a legal distinction between No. 150 and No. 94 remains to be seen. Any person complaining of the procedures or provisions of No. 150 should attack it by a separate action as was done in Ash II, supra.[6]
 
 
 22
 Judgment Accordingly.
 
 
 23
 J. SKELLY WRIGHT, Circuit Judge, dissenting:
 
 
 24
 Though I sympathize with the desire of the majority of the panel to avoid deciding this case on the confused record before us, I cannot concur in today's decision to dismiss this appeal as moot. The majority's finding of mootness permits the Bureau of Alcohol, Tobacco, and Firearms (BATF) to evade legitimate challenges to its purported authority to rescind health and consumer-protection regulations.
 
 
 25
 We originally were to have reviewed a decision of the District Court in Center for Science in the Public Interest v. Dep't of the Treasury, Memorandum Order in D.D.C. Civil Action No. 82-610 (Feb. 8, 1983). In that decision the trial judge evaluated a 1981 rule promulgated by BATF that rescinded regulations mandating ingredient labeling of all alcoholic beverages. See T.D. ATF-94, 46 Fed.Reg. 55093 (1981). BATF had promulgated the regulations requiring labeling a year earlier. See T.D. ATF-66, 45 Fed.Reg. 40538 (1980).
 
 
 26
 Concerned about the millions of reported allergic reactions to ingredients in alcoholic beverages (including some deaths), Center for Science in the Public Interest (CSPI) challenged the 1981 rescinding rule, T.D. ATF-94, on grounds that it comported with neither the substantive mandates of BATF's enabling statute, the Federal Alcohol Administration Act (FAAA), 27 U.S.C. Sec. 201 et seq. (1976 & Supp. V 1981), nor the reasoned decisionmaking requirements of Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. Sec. 706 (1982). The trial judge agreed; he invalidated the 1981 rescinding rule, T.D. ATF-94, and ordered reinstatement of the 1980 rule requiring labeling, T.D. ATF-66. BATF complied with this order and reissued the labeling rule. See 48 Fed.Reg. 10309 (1983).
 
 
 27
 BATF then appealed the District Court's decision to this court, and, while appeal was pending, instituted a new rulemaking proceeding on June 27, 1983, to reexamine the question of ingredient labeling in light of the District Court's decision. See 48 Fed.Reg. 27782 (1983). After notice and comment rulemaking, BATF promulgated a new rescinding rule on October 6, 1983. T.D. ATF-150, 48 Fed.Reg. 45549 (1983). The new rule was in substance virtually identical to T.D. ATF-94, the 1981 rescinding rule that the District Court had invalidated. The new rule eliminated all labeling requirements save one; it required labels to disclose the use of Yellow Dye No. 5. Perhaps the most significant alteration came not in the rule itself but in the statement of basis and purpose accompanying the rule. BATF explained its rationale for rescission in much greater detail than it had in 1981.
 
 
 28
 The new rule fell like a bombshell into this litigation. BATF promulgated the rule on October 6th, three weeks before oral argument was scheduled to take place, and simultaneously made a motion before this court to dismiss the case as moot. The mootness argument was straightforward. CSPI had challenged, and the trial court had invalidated, T.D. ATF-94. The new rule, T.D. ATF-150, superseded T.D. ATF-94. Thus, BATF argued, the rule challenged below was a dead letter and the case should be dismissed as moot. Unfortunately, the issue was not so simple. Nearly identical to T.D. ATF-94, the new rule raised several of the same issues as had its superseded predecessor. For example, the new rule presented the identical question of whether rescission violated the statutory mandates of the FAAA. As a result of this confusion of issues, and the short time the parties had to sort through the changed circumstances that the new rule occasioned, oral argument amounted to something less than a focused and orderly consideration of the decisive issues.
 
 
 29
 Now that the dust has settled somewhat, it is apparent that this case should not be dismissed as moot even though BATF's decision to promulgate a new rule pending appeal was not necessarily improper. See Action on Smoking and Health v. CAB, 713 F.2d 795 (D.C.Cir.1983) (implicitly approving the possibility of action like that BATF took in this case). We have recognized in other contexts that "intervening changes made by the executive or legislative branches, and particularly by administrative agencies exercising their discretion to improve government programs, may alter the course of litigation midstream." Gray Panthers v. Schweiker, 716 F.2d 23, 33 (D.C.Cir.1983). That an agency may properly conduct new rulemaking to supersede a regulation under challenge in the courts does not, however, compel the conclusion that challenges to regulations are necessarily rendered moot when an agency promulgates rules or regulations that supersede those being challenged. General principles underlying the mootness doctrine, and precedent giving effect to these principles in the context of review of administrative action, preclude such a simple resolution.
 
 
 30
 The mootness doctrine springs from the language in Article III of the United States Constitution that limits federal court jurisdiction to "cases" or "controversies." This case or controversy limit mandates that questions be "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). Circumstances sometimes shift during the course of a litigation in a way that calls into question whether a concrete dispute between the parties exists any longer. Not every change in circumstance, however, will so erode the adversarial context as to require dismissal. In deciding whether changed circumstances have rendered a case moot, the appropriate question is whether a live controversy between adverse parties still exists at the time the court reviews the case. Franks v. Bowman Const. Corp., 424 U.S. 747, 755, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976). In the context of review of agency action, the case law establishes that a sufficiently live controversy may remain in a case even after an agency regulation, order, or practice initially giving rise to the case is no longer in effect. Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Associated Third Class Mail Users v. U.S. Postal Service, 662 F.2d 767, 770 (D.C.Cir.1980); Nader v. Volpe, 475 F.2d 916, 917 (D.C.Cir.1973); Big Rivers Electric Corp. v. EPA, 523 F.2d 16, 19 (6th Cir.1975), cert. denied, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976); Environmental Defense Fund, Inc. v. Gorsuch, 713 F.2d 802, 810-811 (D.C.Cir.1983).
 
 
 31
 These cases recognize that certain administrative actions will by their nature or implementation be too short in duration to permit judicial review of their propriety, yet will raise important legal questions that need to be resolved in order to settle the authority of the agency to take similar actions in the future. Such a situation can occur when an agency action is by its terms limited in duration, e.g., Southern Pacific Terminal Co. v. ICC, supra; Delta Airlines, Inc. v. CAB, 674 F.2d 1 (D.C.Cir.1981), when an agency voluntarily ceases a challenged action, e.g., Environmental Defense Fund, Inc. v. Gorsuch, supra, or when, as in the present controversy, new agency regulations supersede challenged regulations, e.g., Associated Third Class Mail Users v. U.S. Postal Service, supra; Big Rivers Electric Corp. v. EPA, supra. In such situations courts find Article III's requirement of a live controversy met if a reasonable expectation exists that the same complaining party will be subject to the same action again. See Murphy v. Hunt, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); cf. County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (a case is dismissable as moot if it can be said with assurance that there is no reasonable expectation that the alleged violation will recur). These situations present live controversies because the party affected by prior regulation has a definite stake in preventing adverse effects from similar actions in the future, while the agency has a distinct and abiding interest in vindicating its authority to undertake such actions. Controversies in these situations are, moreover, concrete; they arise from the likely repetition of a particular set of circumstances, not from hypothesis or abstraction. Most importantly, review in these situations is necessary to ensure that an agency's authority to undertake the challenged actions can be put to the test. See Nader v. Volpe, supra, 475 F.2d at 917 ("to dismiss cases challenging the legality of such exemptions [to safety regulations] simply because the exemption had been withdrawn or had expired would prevent courts from ever deciding the important question of whether or not the Secretary has authority to issue such exemptions").
 
 
 32
 BATF's promulgation of the new rule, T.D. ATF-150, has left this reviewing court in a somewhat difficult position. The 1981 rescinding rule that CSPI challenged, T.D. ATF-94, is now technically a dead letter. Yet the new rule is in substance identical to the superseded rule. These conflicting pulls make the proper disposition of this appeal a difficult matter. On the one hand, we cannot proceed to review BATF's action under Section 10 of the APA to ensure that the agency has considered all relevant factors, made a rational administrative choice given the record before it, and explained its choice adequately. See Telocator Network of America v. FCC, 691 F.2d 525, 537 (D.C.Cir.1982). Such review of the 1981 rescinding rule, T.D. ATF-94, would be pointless because that rule and its accompanying statement of basis and purpose have been superseded. Such review of the 1983 rescinding rule, T.D. ATF-150, would be premature; the new rule is based on a new administrative record not before this court on appeal, and the parties have had no opportunity to brief the issue. On the other hand, the issues of substantive violation of the FAAA are squarely presented. One of CSPI's challenges to the 1981 rule, T.D. ATF-94, was that the rescission of the ingredient labeling requirement violated the FAAA because that statute mandates ingredient labeling. The identical issue arises with respect to the new rule, T.D. ATF-150. If the FAAA does mandate labeling, then the new rule, which again rescinds labeling requirements, violates the statute in exactly the same manner as the old rule would have.[1] No amount of additional explanation in the statement of basis and purpose can save the new rule on this point.
 
 
 33
 The condition of the case thus does not admit of complete resolution by this court on appeal. And dismissal of this case as moot will not technically deprive CSPI of the opportunity to challenge the new rescinding rule, T.D. ATF-150, on both procedural and substantive grounds. Nonetheless, a decision to dismiss this case as moot is inappropriate for two reasons. First, a finding of mootness sanctions BATF's effort to evade judicial review of the issue of its statutory authority. Since the mootness doctrine is particularly sensitive to the need to ensure that an agency's authority to take action can be put to the test, and since the issue of BATF's statutory authority to rescind the labeling rule is presented to us in a concrete adversarial context, review of that issue is appropriate. Second, a dismissal of the entire case would amount to an enormous waste of judicial resources.
 
 
 34
 Evasion of Review. A finding of mootness permits BATF to evade this challenge to its authority to rescind labeling rules, and in effect sanctions any similar future evasions BATF might seek to undertake. When CSPI or any other potential plaintiff challenges T.D. ATF-150 in the future, BATF can simply repeat the tactic that it has already used once in this case: issue a new rule that differs from the superseded rule only in some cosmetic aspect. If T.D. ATF-150 had differed substantially from T.D. ATF-94, this would have been a different case. We would not necessarily have the issue of BATF's statutory authority to rescind re-presented so starkly to us by the new rule, and we would have less reason to view BATF's hasty 1983 rulemaking as an endeavor to preempt appellate review of an unfavorable decision at the trial level. But the near total congruence of the old and new rules, and the timing of the new rule's promulgation, preclude taking a charitable view of BATF's action, and should force us to review T.D. ATF-150 to decide whether it comports with the mandates of the FAAA.
 
 
 35
 Review of the statutory issue is fully consistent with the general principles of the mootness doctrine as those principles have been applied in the administrative context. The issue presents itself to us in a genuine adversarial context and in a form historically viewed as capable of resolution through the judicial process. See Flast v. Cohen, supra, 392 U.S. at 94-95, 88 S.Ct. at 1949-1950. The adversarial vigor of the parties is beyond question. CSPI faces more than the potential of again being subjected to the superseded agency regulation; the precise statutory violation alleged in the earlier regulation has already recurred to CSPI's detriment. On the other side, BATF certainly has a stake in vindicating its authority under the FAAA to rescind labeling rules.[2] And the issue is posed in a concrete form susceptible of judicial resolution. The court must decide whether a specific decision to rescind labeling rules embodied in T.D. ATF-150 violates the statutory mandates of the FAAA. The parties have briefed and argued the issue fully.[3]
 
 
 36
 Most importantly, resolution of the issue in this proceeding may well be imperative to ensure that some forum exists for CSPI to challenge BATF's statutory authority to rescind labeling regulations. See Nader v. Volpe, supra, 475 F.2d at 917. The fact that a new regulation, theoretically susceptible to CSPI's future challenge, is now on the books should not alter the analysis. Though most cases approving judicial review of a superseded agency action have done so during a hiatus between regulations, see Southern Pacific Terminal Co. v. ICC, supra, 219 U.S. at 515, 31 S.Ct. at 283, courts have on numerous occasions reviewed the statutory authority of an agency to promulgate a rule even when that rule had been superseded by a new rule. E.g., Big Rivers Electric Corp. v. EPA, supra, 523 F.2d at 19; Associated Third Class Mail Users v. U.S. Postal Service, supra, 662 F.2d at 770.
 
 
 37
 In Associated Third Class Mail Users a panel of this court (Bazelon, Robinson, and MacKinnon, JJ) faced a situation analogous to that of the present case. Plaintiffs had challenged certain postal rates on the ground that they had not been promulgated in compliance with the requisite procedures established in the by-laws of the Board of Governors of the Postal Service. During the litigation the Board of Governors amended its by-laws in a way that validated the procedures by which the challenged rates were promulgated. Even after that change, however, there remained an issue in the case. Plaintiff had claimed that the initial procedures in the by-laws of the Board of Governors violated that Board's enabling statute. When the challenged procedures were superseded they were replaced with a new set of procedures that raised the identical statutory issue. Although the procedures challenged originally were a dead letter at the time of appellate review, the court went on to decide the statutory issue as it pertained to the new superseding regulations. 662 F.2d at 770-771. The considerations militating in favor of review in the present controversy are even stronger than those in the postal rate case. That case contained no suggestion that the Postal Service would seek to evade review of its new by-laws, whereas BATF's past actions indicate that it may well continue to endeavor to evade review on the issue of its statutory authority.
 
 
 38
 Judicial Economy. The trial court in this case has already spent a considerable amount of time mastering the intricacies of the FAAA, the complex record before BATF, and the possible justifications for rescission of the labeling requirement. Given the near identity of legal and scientific issues that the old rule, T.D. ATF-94, and the new rule, T.D. ATF-150, raise, a decision to dismiss this case as moot and send CSPI back to the starting block would amount to a remarkable waste of judicial resources. A new trial court would have to duplicate the extensive efforts of the court below, assuming CSPI has the resources to renew its challenge. All this repeated effort would, moreover, take place under the shadow of the possibility that BATF might seek to evade an adverse judgment again, should one appear on the horizon. In light of these facts, a decision to vacate and remand with instructions to dismiss as moot is simply not a sensible resolution to this controversy.
 
 
 39
 Instead, this court should decide the statutory issue on the record before us. Adverse parties have fully briefed and argued this concrete issue, and no constitutional or prudential concerns weigh against our deciding it. If we decide that the FAAA does indeed mandate ingredient labeling, we must invalidate the 1983 rescinding rule, T.D. ATF-150. If we decide that the FAAA does not mandate labeling, we should remand the case to the District Court for a decision on the issue of whether the new rule comports with the reasoned decisionmaking requirements of Section 10 of the APA. Given the near identity of the old and new rescinding rules, and the great effort the trial court has already expended in understanding the issues, the trial court will be in a position readily to make an informed judgment on the question of compliance with Section 10's requirements.
 
 
 40
 Though this court is of course reluctant to assume anything less than the utmost integrity on the part of an administrative agency, BATF's action in this case should give us pause. The virtual congruence of the old and new rules, and the timing of the promulgation of the new rule, give strong indication that BATF was seeking primarily not to "improve government programs" but to preempt a possible affirmance of a lower court decision adverse to it. By dismissing this case as moot, the court has permitted BATF to evade review of its statutory authority to rescind a health regulation that the FAAA may mandate. More ominously, the court sanctions a practice that will permit agencies to evade similar challenges to their authority in the future. No constitutional or prudential considerations preclude this court from deciding the issue of BATF's statutory authority to rescind the labeling requirement. In fact, mootness principles are particularly solicitous of such challenges to an agency's authority to act. We should therefore decide this issue.
 
 
 41
 I respectfully dissent.
 
 
 
 [1]
 The Council's authority to intervene was limited: the Council was barred from contending that No. 66 exceeded the agency's authority under the Act, or that the regulation was arbitrary, capricious, and an abuse of discretion. Center for Science in the Public Interest v. Regan, Civ.A. No. 82-00610 (D.D.C. April 7, 1983) (order permitting intervention upon appeal)
 
 
 [2]
 As the Council points out, the questions that were raised concerning the merits of No. 94 and which are not necessarily present with respect to the subsequent No. 150 include the following: (1) whether the district court applied an incorrect standard of review; (2) whether the Treasury Department was required to promulgate an ingredient label regulation under the Federal Alcohol Administration Act; (3) whether the Treasury Department had authority to do so; (4) whether the decision of the Treasury Department to rescind No. 66 was supported by the administrative record and was adequately set forth in the statement of basis and purpose; (5) whether there was sufficient support for the promulgation of No. 66 in the first place; and (6) whether the district court erred by not remanding the case involving No. 94 to the Bureau of Alcohol, Tax and Firearms
 
 
 [3]
 Indeed the district court has itself construed its order not to preclude subsequent agency action. On September 6, 1983, that court denied the motion of the Center to require Treasury to cut short the rulemaking proceeding that ultimately produced No. 150. In so ruling, the district court explicitly stated that it would not interfere with the agency's legitimate authority to reconsider its regulations at any time. Center for Science in the Public Interest v. Regan, Civ. A. No. 82-00610 (D.D.C. Sept. 6, 1983) (order denying motion to enforce judgment)
 
 
 [4]
 Well before Munsingwear itself, the Supreme Court had held that "where it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the cause with instructions to dismiss." Duke Power Co. v. Greenwood County, 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936). For cases adopting the Munsingwear approach, see Great Western Sugar Co. v. Nelson, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979); United States v. District of Columbia, 709 F.2d 1521 (D.C.Cir.1983); Douglas v. Donovan, 704 F.2d 1276 (D.C.Cir.1983); Associated Third Class Mail Users v. U.S. Postal Serv., 662 F.2d 767 (D.C.Cir.1980)
 
 
 [5]
 Nor do we express any opinion as to any possible preclusive effect following from the district court decision. Any such determination would best be made, in the first instance, by the district court or by a court asked to apply that decision. See CFTC v. Board of Trade, supra, 701 F.2d at 658; Ringsby, supra, 686 F.2d at 722
 
 
 [6]
 The principal difficulty with the dissent is that it attempts to decide a subsequent case, one that it concedes is a somewhat different case, on the ground that it is the same case presently before this Court. Moreover, the dissent tries to do so without any record of the facts that constitute the new case. We cannot assume jurisdiction to decide a case on the ground that it is the same case as one presented to us, when it is admitted that it is not and when it presents different issues. Numerous extracts from the language of the dissent concede that the case the dissent now attempts to decide is not the same as the case appealed. The following quotations from the dissent recognize the differences and changes in the new regulation:
 (1) "The new rule was in substance virtually identical to T.D. ATF-94 ...." Dissent at 1169 (emphasis added). That statement is a judicial decision made by the dissent without any factual record. The phrase "in substance" indicates that some difference exists.
 (2) The dissent asserts that the new rule "eliminated all labeling requirements save one ...." That was a most important one: "Yellow Dye No. 5." Dissent at 1169 (emphasis added).
 (3) The dissent admits that a "most significant alteration ... in the rule [was made] ... in the statement of basis and purpose accompanying the rule. BATF [the Department] explained its rationale for rescission in much greater detail than it had in 1981." Dissent at 1169 (emphasis added). The inadequacy of the original statement of basis and purpose was one of the very grounds upon which the earlier rule had been invalidated. Hence, what the dissent now concedes to be a "significant alteration" does not present the same issue.
 (4) The new rule is characterized as "[n]early identical to T.D. ATF-94 ...." Dissent at 1169 (emphasis added). The adverb signifies that some difference exists.
 (5) The dissent concedes that the agency's "decision to promulgate a new rule pending appeal was not necessarily improper." Dissent at 1169 (emphasis added). Yet the dissent would go on and decide that it was improper, without any record to indicate the steps taken in formulating the new rule.
 (6) "[T]he new rule is in substance identical to the superseded rule." Dissent at 1171 (emphasis added). Even the italicized modification of this statement does not do full justice to the prior concession by the dissent that the basis and purpose was stated "in much greater detail " in the prior rule. Dissent at 1169, see supra (emphasis added).
 (7) The dissent also concedes that "the condition of the case thus does not admit of complete resolution by this court on appeal." Dissent at 1171 (emphasis added).
 (8) To assert that the new rule is a "near total congruence of the old" or a "virtual congruence," Dissent at 1171, 1173 (emphasis added), or that the case raises "[t]he identical [statutory] issue," Dissent at 1171 (emphasis added), is to overlook the previous concessions by the dissent that the two cases are not identical. See supra.
 This Court must recognize that appellate jurisdiction cannot be predicated upon a speculative or irrational fear as to future agency conduct, especially when it is admitted that the agency's promulgation of "a new rule pending appeal was not necessarily improper. See Action on Smoking and Health v. CAB, 713 F.2d 795 (D.C.Cir.1983)." Dissent at 1169. Further authority for an agency to engage in additional rulemaking following a decision that a prior rescission of a rule was arbitrary and capricious is found in the recent decision by this Court, International Ladies' Garment Workers Union v. Donovan, 722 F.2d 795 (D.C.Cir.1983) (remanding to district court with instructions to return matter to agency for further proceedings).
 As the main body of this majority opinion forcefully establishes, this case is moot upon appeal. The dissent concedes that this "case does not admit of complete resolution by this court on appeal," Dissent at 1171, yet nevertheless would go on to decide the issue of whether the FAAA provides a statutory mandate for No. 66. The first problem with that approach is that, even had this case not been mooted, it is by no means clear that this Court would have had to reach that statutory issue in order to decide the case. The main thrust of the district court decision was that the Treasury had inadequately explained its rescission of No. 66, and that holding was as far as the district court needed to go in reaching its judgment. To the extent that the district court can be said to have addressed the putative statutory mandate, its discussion was later qualified by its subsequent Order explicitly refusing to interfere with the Treasury's further rulemaking proceedings, the same proceedings that ultimately led to the promulgation of No. 150. Center for Science in the Public Interest, et al. v. Regan, Civ. A. No. 82-00610 (D.D.C. Sept. 6, 1983) (order denying motion to enforce judgment). That subsequent Order indicates that to whatever degree the district court did perceive some "statutory mandate," the court certainly did not view it as an absolute. The entire development of this case thus far indicates that the question of the statutory mandate is at best a sidelight--and therefore an issue that need not necessarily have been reached on appeal.
 Furthermore, although it might be helpful or "economical" for this Court to offer the district court appellate guidance on the putative statutory mandate, we are prevented from doing so by the constitutional "case" or "controversy" requirement. U.S. Const., art. III, Sec. 2. Federal courts of appeals may, in proper cases, guide future district court decision-making, but purely advisory opinions are constitutionally impermissible. This prohibition inherent in article III has added force where the issue sought to be decided would not even have been necessarily presented had the case on appeal remained alive. For this Court to address that issue would be to decide a hypothetical on a hypothetical. The "case" or "controversy" constraint is designed to prevent exactly the kind of gratuitous legal decisionmaking in which the dissent would engage in this case.
 The dissent attempts to hurdle the constitutional barrier in several bounds, but each effort falls short. Primarily, the dissent maintains that to leave the issue undecided is to sanction the agency's "evasion of review." But as the dissent itself concedes, the agency's further rulemaking was a legitimate step, one not precluded by the district court decision. When an agency's action has been struck down as inadequately explained, the agency is certainly acting within its authority when it attempts to offer a better explanation. Thus "evasion" is merely a loaded term in this context. Moreover, the dissent's references to evasion are no more persuasive when taken in the context of its invocation of the doctrine of "capable of repetition, yet evading review," which creates an exception to the general rule of mootness. The dissent contends that this opinion ignores settled case law recognizing that exception. To the contrary, the Court recognizes the significance of that doctrine, first announced in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), and since developed in a number of decisions by the Supreme Court and within this circuit. We are also aware, however, that the doctrine of "capable of repetition, yet evading review" is essentially a judicial gloss on a constitutional requirement, and cannot be routinely invoked whenever a court would prefer to expound upon an issue--particularly when the relevant facts are not before the court.
 The familiar Southern Pacific case itself best demonstrates the purpose of the doctrine that it announced. Appellants there had been enjoined from certain conduct by an order of the Interstate Commerce Commission, and the order had been upheld by a lower court. By the time the case reached the Supreme Court, the order had expired, and the Commission asked that the case be dismissed as moot. In declining to do so, the Court made its purpose clear: to prevent a party interested in preserving a lower court judgment from defeating judicial review by "mooting" the case at the appellate stage. 219 U.S. at 515, 31 S.Ct. at 283. In short, the doctrine of "capable of repetition, yet evading review," as enunciated in Southern Pacific, safeguards the losing party's right to obtain review of a prior decision. By analogy, in a case where statutory review of an agency action lies directly in the court of appeals, the doctrine protects the right of a party adversely affected by the administrative action to obtain initial judicial review of the agency action.
 In the case at bar, dismissal of these appeals does not run contrary to this purpose. No party is deprived of a right to review. As this opinion has emphasized, it was the agency and the intervenors--the losing parties below--who sought review. Each of the appellants has asked that its appeal be dismissed, so it cannot be maintained that these parties will suffer any deprivation of appellate review. (Although the dissent contends that the Treasury has a strong interest in seeing the statutory issue decided, Dissent at 1171, this Court would prefer to allow the Treasury to be the judge of its own best interests in this litigation.) At the same time, appellee the Center is not adversely affected by this Court's decision holding this case moot. The Center did not appeal the district court decision; nor is the Center deprived of the benefits of that favorable decision, which this opinion leaves intact and does not vacate. Thus it is difficult to understand the dissent's apparent premise that the Center must be allowed, in this case, to present a new issue and attack the agency's statutory authority to rescind labeling regulations. See Dissent at 1172. Our decision today leaves all the parties in the same position as if no appeal from the district court decision had been taken. Had the Treasury decided initially not to appeal, surely that election could not be deemed an "evasion of review." To maintain otherwise would lead to the absurd result of imposing on agencies a duty to appeal adverse decisions, merely for the sake of obtaining a more authoritative determination of the legal issues involved. Our decision today permits only an outcome no different than if no appeal had ever been taken.
 Even viewing the ingredient labeling controversy as broadly as possible, there is no likelihood that it will evade review. The dissent essentially concedes that the ultimate resolution of this dispute can emerge only after a trial court's review of No. 150. Dissent at 1171. Any such determination would be appealable to this Court. The Center and all other interested parties may obtain review in that manner. Thus, under the present circumstances, judicial review will in no way be cut short by the decision of this Court.
 As an adjunct to its "capable of repetition, yet evading review" argument, the dissent maintains that this case is presented in a manner that makes the case susceptible to judicial resolution. Dissent at 1171 - 1172 (citing Flast v. Cohen, 392 U.S. 83, 94-95, 88 S.Ct. 1942, 1949-1950, 20 L.Ed.2d 947 (1968)). More specifically, the dissent claims that the statutory issue has been argued with adversarial vigor, and is presented in a sufficiently concrete manner. Although the adversarial vigor of the parties is impressive in many respects, the statutory issue has not been forcefully presented to this Court. The Treasury, whose views on this issue ought to be valued, addressed the point only indirectly in its brief. Adversarial energy at oral argument centered on the mootness questions; as the dissent aptly puts it, "oral argument amounted to something less than a focused and ordered consideration of the decisive issues." Dissent at 1169. Furthermore, the presentation of the statutory issue cannot be said to be "concrete." The issue can arise only in the context of some agency action--presumably either No. 94 or No. 150. The former is a dead letter. The latter is known to this Court in only a highly superficial manner; we do not have before us one word from the underlying administrative record on No. 150. Far from being concrete, the present situation amounts to a vacuum.
 The dissent's final leap at the constitutional hurdle is taken in the name of "judicial economy." The dissent assumes that the "new trial court would have to duplicate the extensive efforts of the court below ...." Dissent at 1171. This assumption is unwarranted for two reasons. First, as this opinion has indicated, not all the issues raised concerning No. 94 are necessarily present concerning No. 150. Second, our decision does not vacate the district court decision, and further holds open the possibility that a future court could give that decision some preclusive effect. As footnote 5, supra, indicates, the district court that confronts No. 150 is free to give the district court decision before us whatever preclusive effect it deserves, should certain issues turn out to be identical. Judicial efficiency may be served in that manner. Concerning these appeals, however, this Court is not empowered to ignore article III on the basis of its own ad hoc judgments about "judicial economy."
 
 
 [1]
 The majority opinion asserts that T.D. ATF-150 does not present the issue "whether the Treasury Department [BATF] was required to promulgate an ingredient label regulation under the Federal Alcohol Administration Act." Majority Opinion at 1164 n. 2. This is plainly wrong. If the FAAA mandates labeling, then the rescission in T.D. ATF-150 violates the Act in exactly the same manner as did T.D. ATF-94. The issue whether ingredient labeling is statutorily mandated is, of course, central to resolution of any challenge to T.D. ATF-150, as it was to T.D. ATF-94
 
 
 [2]
 The majority opinion stresses that BATF appealed only the portion of the District Court's opinion reinstating the ingredient labeling rule, T.D. ATF-66. Majority Opinion at 1164 - 1165. Even if this characterization is correct, BATF's appeal on this issue still raises the question whether FAAA mandates ingredient labeling. As BATF recognized in its brief, the District Court's decision to order reinstatement of the labeling rule, and not merely to remand to BATF after invalidating T.D. ATF-94, strongly implies that the District Court thought labeling to be statutorily required. Accordingly, BATF fully argued this point in its brief. See brief for federal appellants at 14-17
 
 
 [3]
 In an exhaustive final footnote the majority opinion lays bare its particular objections to this dissent. In essence the majority argues that the "cases" or "controversies" requirement of Article III of the Constitution precludes review in this case because the challenged rule has been superseded, and the "capable of repetition yet evading review" justiciability doctrine--which the majority labels an "exception to the general rule of mootness" and a "judicial gloss on a constitutional requirement," Majority Opinion at 1167-1168 n. 6--does not apply here. This argument is somewhat opaque. If, as the majority appears to say, the Constitution forbids review of a superseded rule, then the courts are not free to carve any "exception" to this constitutional prohibition. Thus, the majority's argument would--its declamations to the contrary notwithstanding--preclude all review of superseded rules. In light of the frequency of judicial review of superseded rules, the implications of the majority's position are untenable. In deciding whether Article III's requirements are met, the court must make a particularized and pragmatic inquiry into whether the case before it is sufficiently adverse and concrete. In some situations challenges to superseded rules will satisfy these requirements
 It must also be noted that the majority misconstrues the purpose of the "capable of repetition yet evading review" doctrine. The doctrine is not meant "to prevent a party interested in preserving a lower court judgment from defeating judicial review." Majority Opinion at 1167 n. 6. None of this circuit's leading cases applying the doctrine have mentioned such a rationale. Rather, courts review to ensure that an agency's authority to act may be tested. See Environmental Defense Fund, Inc. v. Gorsuch, 713 F.2d 802, 809-811 (D.C.Cir.1983). Indeed, in many cases involving direct statutory review there is no lower court opinion to preserve. In such cases a party aggrieved by a short-term agency order challenges the order in this court. See, e.g., Delta Airlines, Inc. v. CAB, 674 F.2d 1, 4. (D.C.Cir.1981).
 Two additional points need to be made. First, despite the majority's characterization of the statutory authority issue as a "sidelight," review of either T.D. ATF-94 or T.D. ATF-150 could not be responsibly undertaken without resolving the statutory authority issue. See note 1 supra. Second, the majority's claim that "the Center is not adversely affected by this Court's decision holding this case moot," see Majority Opinion at 1168 n. 6, is true only in the most arid and formalistic sense. Though the rule CSPI initially challenged is now a dead letter, a new rule with the identical substantive effect is in place. Indeed, unless we are to view CSPI as a most quixotic plaintiff, the vigor with which it has contested the claim of mootness attests to the adverse effect of the majority's decision.