797 F.2d 995
 254 U.S.App.D.C. 328, 55 USLW 2122
 CENTER FOR SCIENCE IN THE PUBLIC INTEREST, et al.
v.
DEPARTMENT OF the TREASURY, et al., Appellants, Distilled
Spirits Council of the United States, Inc.
CENTER FOR SCIENCE IN THE PUBLIC INTEREST, et al.
v.
DEPARTMENT OF the TREASURY, et al., Distilled Spirits
Council of the United States, Inc., Appellant.
 Nos. 85-6133, 85-6155.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 23, 1986.
Decided Aug. 5, 1986.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 84-02079).
 Marleigh D. Dover, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and John F. Cordes, Atty., Dept. of Justice, Washington, D.C., were on the brief for Department of the Treasury, et al., appellants in No. 85-6133 and appellees in No. 85-6155. Robert E. Kopp, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for the Department of Treasury, et al.
 Paul L. Friedman, with whom Lawrence B. Gotlieb, Washington, D.C., was on brief for Distilled Spirits Council of the United States, Inc., appellant in No. 85-6155 and appellee in No. 85-6133.
 Bruce Silverglade, Washington, D.C., and Mitchell Zeller for Center for Science in the Public Interest, et al., appellees in Nos. 85-6133 and 85-6155.
 John M. Studner, Washington, D.C., was on brief, for amicus curiae, New York State Consumer Protection Bd. in No. 85-6133 urging affirmance.
 Before WALD, Chief Judge, GINSBURG, Circuit Judge, and RE,* Chief Judge, United States Court of International Trade.
 Opinion for the Court filed by Chief Judge WALD.
 WALD, Chief Judge:
 
 
 1
 For more than a decade, the Center for Science in the Public Interest ("CSPI") and the Bureau of Alcohol, Tobacco and Firearms ("BATF") have been sparring over the need to disclose ingredients on the labels of alcoholic beverages. BATF finally adopted an ingredient disclosure rule in 1980, but rescinded it in 1981; the recission was reversed by the District Court in 1983 but, after a round of legal maneuvers, BATF substantially rescinded the rule again later that year. Although we reject several of BATF's stated reasons for the second rescission, we conclude that the agency has nonetheless managed to bring itself within the confines of reasoned decisionmaking and has adequately, if minimally, explained its reversal. We therefore reverse the District Court's decision vacating BATF's 1983 rulemaking.
 
 I. BACKGROUND
 
 2
 The Federal Alcohol Administration Act ("FAA Act"), 27 U.S.C. Sec. 205(e) (1982), authorizes the Secretary of the Treasury to promulgate such regulations:
 
 
 3
 (1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit, irrespective of falsity, such statements ... as the Secretary of the Treasury finds to be likely to mislead the consumer; [and] (2) as will provide the consumer with adequate information as to the identity and quality of the products....
 
 
 4
 This authority, now exercised by BATF, was first invoked with respect to ingredient labeling in 1974. BATF proposed a broad labeling rule which would have required across-the-board listing of all ingredients in malt beverages, except incidental additives, in order of predominance. 39 Fed.Reg. 27,812 (1974); see also 40 Fed.Reg. 6349 (1975) (same for wine); 40 Fed.Reg. 6354 (1975) (same for distilled spirits). These proposals were withdrawn in 1975 after the agency concluded that the proposed regulations were, inter alia, excessively costly, potentially misleading as to the nutritional value of alcoholic beverages, and unnecessary because ingredient usage was already comprehensively regulated. 40 Fed.Reg. 52,613 (1975).
 
 
 5
 In 1979 BATF proposed what it characterized as a "partial ingredient labeling" rule. The proposal trimmed the costs of the 1974 approach in several ways: eliminating the requirement that ingredients be listed in order of predominance, clarifying the requirement that incidental additives not be listed, and permitting "shotgun" labeling of essential components--such as "grapes and/or grape juice"--to reduce the need for frequent label changes. 44 Fed.Reg. 6740, 6740-41 (1979).
 
 
 6
 After receiving comments on the proposed rule, designated ATF-66, BATF concluded that "the disclosure of ingredients used in the production of alcoholic beverages is of real value" and adopted the regulations substantially as proposed. 45 Fed.Reg. 40,538, 40,540 (1980). The agency acknowledged, however, that there were "uncertainties existing in the data underlying the health and consumer benefits," primarily with respect to the extent of allergic reactions to alcoholic beverage ingredients. Id. at 40,539-40. BATF made one major change in adopting ATF-66 in order to accommodate its goal of "minimizing costs to industry and consumers in meeting regulatory objectives," adding an "address label option" so that, when certain conditions were met, a company could simply provide its address on the label and send an ingredients listing to anyone who requested such information. Id. at 40,540-41.
 
 
 7
 Less than one year after adopting ATF-66, BATF proposed rescinding the rule on the ground that it did not accord with the mandate of Executive Order 12,291 to minimize the costs of regulation. 46 Fed.Reg. 24,962, 24,693 (1981). BATF's statement of reasons for rescinding the rule was brief and concluded that
 
 
 8
 the ingredient labeling regulations would result in increased costs to consumers and burdens on industry which are not commensurate with the benefits which might flow from the additional label information ... [and] would not result in an appreciable benefit to consumers when compared to the existing label information requirements and standards of identity.
 
 
 9
 46 Fed.Reg. 55,093, 55,094 (1981).
 
 
 10
 CSPI promptly challenged BATF's reversal, winning a district court order declaring the agency's action to be in violation of both the FAA Act and the Administrative Procedure Act. Center for Science in the Public Interest v. Department of the Treasury, 573 F.Supp. 1168, 1179 (D.D.C.1983) [hereinafter cited as CSPI I ]. The District Court concluded that the agency's virtually exclusive reliance on Executive Order 12,291 violated the FAA Act and that the agency had failed to state a permissible reason for the rescission, rejecting the agency's conclusions that the rule's costs exceeded its benefits and that existing regulations provided adequate information to consumers. Id. at 1174-78.
 
 
 11
 BATF appealed only from that portion of the District Court's order mandating implementation of ATF-66 within one year; the Wine Institute and Distilled Spirits Council of the United States ("DISCUS") appealed the remainder of the decision. Before the appeal could be heard, BATF proposed and finalized ATF-150, a new rulemaking substantially rescinding ATF-66. 48 Fed.Reg. 27,782 (1983) (proposed rule); 48 Fed.Reg. 45,459 (1983) (final rule). This court accordingly dismissed BATF's appeal of the mandatory effective date as moot. Center for Science in the Public Interest v. Regan, 727 F.2d 1161, 1164-65 (D.C.Cir.1984) [hereinafter cited as CSPI II ]. We refused, however, to vacate the remainder of the District Court's decision because review had been prevented by the deliberate action of the losing party and so CSPI "ought to be left in the same position as if no appeal had been taken." Id. at 1165-66.
 
 
 12
 In ATF-150, BATF rescinded the ingredient labeling rule because, inter alia, the information provided was not of interest to consumers and might mislead them, uncertainties existed as to potential health benefits, the rule's costs were substantial and not justified by the negligible benefits, existing regulations would generally be adequate to protect consumers, and the address label option would not provide the anticipated cost savings. 48 Fed.Reg. at 45,550-54. Instead, the agency adopted a case-by-case approach to requiring disclosure of ingredients shown to pose health problems and mandated disclosure of an artificial color, FD & C Yellow No. 5. Id. at 45,554-55. CSPI again challenged BATF's action and the District Court again concluded that BATF had failed to provide a reasoned explanation for its rescission. Center for Science in the Public Interest v. Department of the Treasury, No. 84-2079, slip op. at 10-12 (D.D.C. Oct. 30, 1985), reprinted in Joint Appendix ("J.A.") 584, 593-95 [hereinafter cited as CSPI III ].
 
 II. STANDARD OF REVIEW
 
 13
 At the outset, we must reject two of CSPI's most strenuously advanced arguments. First, BATF has committed no error by undertaking a new rulemaking in response to the District Court's action in CSPI I. As we pointed out in CSPI II, "it is not improper for an agency to engage in new rulemaking to supersede defective rulemaking." 727 F.2d at 1164.[1] Second, BATF need not base its reversal on new evidence or changed circumstances. The Supreme Court has acknowledged that an agency may change its course "either with or without a change in circumstances." Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 57, 103 S.Ct. 2856, 2873, 77 L.Ed.2d 443 (1983).
 
 
 14
 An agency which chooses to reverse a previously held position must, however, supply a "reasoned analysis" of its decision. Id. Such an analysis should include an explanation for the reversal which is supported by the record and a discussion of what alternatives were considered and why they were rejected. International Ladies' Garment Workers' Union v. Donovan, 722 F.2d 795, 817-18 (D.C.Cir.1983). While reviewing courts start with a "presumption ... against changes in current policy that are not justified by the rulemaking record," State Farm, 463 U.S. at 42, 103 S.Ct. at 2866, an agency which "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action," id. at 43, 103 S.Ct. at 2866, has met its burden of justification. See Center for Auto Safety v. Peck, 751 F.2d 1336, 1343 (D.C.Cir.1985).
 
 
 15
 This Court has further explained that while an agency which seeks to revoke an existing rule carries
 
 
 16
 [t]he burden ... to justify the change from the status quo[,] that justification need not consist of affirmative demonstration that the status quo is wrong; it may also consist of demonstrating, on the basis of careful study, that there is no cause to believe that the status quo is right, so that the existing rule has no rational basis to support it.
 
 
 17
 Id. at 1349 (citation omitted). Here BATF concluded that its prior decision in ATF-66 "was unwise ... [and] a different decision is preferable and within the zone of legitimate discretion under the FAA Act." 48 Fed.Reg. at 45,556.[2] This decision must be upheld if it is the product of careful study and reasoned decisionmaking. We therefore review, seriatim, the primary reasons advanced by BATF to justify its policy reversal.
 
 III. BATF'S RATIONALES
 A. Consumers' Informed Choice
 
 18
 BATF promulgated ATF-66 pursuant to its authority to "provide the consumer with adequate information as to the identity and quality" of alcoholic beverages. 27 U.S.C. Sec. 205(e) (1982). In rescinding ATF-66, BATF found that the ingredient disclosure rule would not achieve its intended purpose of "provid[ing] consumers with information upon which to make an informed choice." 48 Fed.Reg. at 45,550. The agency concluded that the information disclosed under the labeling requirement or address label option "would not be useful and is not of substantial interest to the consumers generally ... [and] may have negative consequences of being misdescriptive of the products." Id. at 45,551. BATF thus drew two related conclusions: that consumers do not want ingredient information and that such information is, in any event, of little value to them. Id. at 45,555.
 
 
 19
 BATF's first rationale--lack of consumer interest in ingredient disclosure--hardly meets the test of reasoned analysis. BATF's assessment was based primarily on an informal survey by a trade association and mentioned only in passing an opinion poll, specially commissioned in connection with ATF-66, which provided harder data on the extent of consumer interest.[3] 48 Fed.Reg. at 45,550. In ATF-66 BATF had carefully considered this data, concluded that it was ambiguous, and declined to rely on consumer interest as a basis for its disclosure requirement. 45 Fed.Reg. at 40,540. Since the original rule was not predicated on consumer interest in ingredient information, the arguable absence of such interest provides no reasoned basis for discarding the rule.
 
 
 20
 Indeed, BATF itself concluded that the lack of grassroots support for ingredient labeling alone was not determinative and acknowledged that it can require disclosure of information which consumers in general have not actively solicited if some consumers would use and benefit from such information. 48 Fed.Reg. at 45,555. Thus, for example, BATF seems to presume that certain people will welcome and rely on label information to avoid substances to which they are allergic. See id. at 45,551 (noting AFT-66's conclusion that "consumers who are allergic to certain ingredients generally should be able to find out ... if those ingredients are used in alcohol beverages so they can avoid the possibility of adverse reactions if they so choose"). Lack of general consumer interest, then, provides no reason for rescinding the rule if ingredient disclosure is intended primarily to provide information to people at risk for allergic reactions.
 
 
 21
 BATF's consumer rationale has a second prong, however, which does provide a reasoned justification for the rescission. The agency concluded that ingredient information was of little value to consumers because "[t]he substantial transformation involved in the production process means that there is only a strained relationship between the initial ingredients which go into the production process and the ultimate contents of the product to be consumed." Id. at 45,555. There is more than enough evidence in the record to support the agency's conclusion that, in many cases, both basic ingredients and additives will be substantially transformed by distillation and fermentation. See infra at 1001 n. 5. Although CSPI has pointed to some contrary evidence that initial ingredients in alcoholic beverages remain in the final product in quantities sufficient to cause allergic reactions, the record supports BATF's conclusion. Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (agency can be supported by substantial evidence even if record also supports opposite conclusion.) Because of this transformation, the ingredients information provided by AFT-66 would have been of little value to consumers generally or to people with allergies, and the label information might even have been misleading since it would not accurately describe the contents of the finished product.[4]
 
 B. Health Benefits
 
 22
 After assessing the additional record evidence on health effects, BATF concluded that the new record contained "uncertainties as to how many people are affected, to what extent, and even whether there are allergic reactions to alcohol beverages." 48 Fed.Reg. at 45,551. The agency therefore decided to address any adverse health effects from specific ingredients on a case-by-case basis. Id.; see infra at 1003. We have examined the record and concur in BATF's characterization of the evidence on the health effects of alcoholic beverage ingredients. Although CSPI has pointed to record evidence of allergic reactions to the contents of alcoholic beverages, there is enough contrary evidence to establish that such reactions are exceptional.[5] See supra at 1000.
 
 
 23
 BATF's position on health effects does represent a reversal of its conclusion in ATF-66 that, although there were uncertainties as to the extent of adverse health effects, there was clear evidence "that ingredients used in alcoholic beverages can have adverse effects for humans including, but not limited to, allergic reactions." 45 Fed.Reg. at 40,540. The more recent conclusion is, however, based on a new record.[6] In particular, the earlier conclusion relied largely on the specially commissioned BDM study, which had examined only allergic reactions to various ingredients used to make alcoholic beverages and made "a very key assumption" that those ingredients remain in the finished product to some degree. J.A. at 758-59. BATF no longer makes this assumption, given the evidence in the 1983 record establishing that there is "considerable medical and scientific dispute over the degree to which components of the initial ingredients may survive the production process to cause allergic reaction." 48 Fed.Reg. at 45,555; see supra at 11 n. 5.
 
 
 24
 We accept BATF's conclusion that rescission was justified in part because of uncertainties that ATF-66 would provide consumers with information useful in preventing adverse health effects such as allergic reactions. An agency cannot, of course, "merely recite the terms 'substantial uncertainty' as a justification for its actions." State Farm, 463 U.S. at 52, 103 S.Ct. at 2871. But "just as an agency reasonably may decline to issue a safety standard if it is uncertain about its efficacy, an agency may also revoke a standard on the basis of serious uncertainties if supported by the record and reasonably explained." Id. at 51-52, 103 S.Ct. at 2870-71. BATF's conclusions as to the uncertain nature of health benefits from ingredient disclosure were so supported and must be upheld.
 
 C. Costs
 
 25
 BATF properly concluded that the costs of ingredient labeling could be considered in assessing whether ATF-66 was necessary to provide consumers with adequate information but that such consideration could not be determinative.[7] See 48 Fed.Reg. at 45,552. Part of BATF's discussion of costs is, however, disingenuous at best. The agency states that it had previously found that the costs of ingredient labeling were not excessive "in large part based upon the assumption that the adoption of the name and address option would significantly reduce the cost of providing the information." 48 Fed.Reg. at 45,551. While the address label option was adopted in order "to minimize the costs while still meeting basic policy objectives," the agency's conclusion that the costs of ingredient labeling were not excessive was based on cost figures which attributed no savings to the address label option. 45 Fed.Reg. at 40,540. It is quite clear that, in 1980, ATF-66 was thought to be cost-effective with or without the address label option.
 
 
 26
 The remainder of BATF's 1983 discussion of why the costs of ingredient labeling are now "substantial" largely rehashes evidence from the 1980 BDM study. The agency provides no reasoned explanation of why the same cost figures which were held to be "not ... excessive" and "not substantial" in 1980 are suddenly "substantial."
 
 
 27
 BATF also explained, however, that the costs of ATF-66 "are not justified by the questionable and negligible benefits of the full disclosure requirements of that decision." 48 Fed.Reg. at 45,552. This conclusion is supportable even if the cost estimates have not changed since 1980. Having reassessed the health benefits of ATF-66, it was rational for BATF to reassess the balance between those benefits and the costs of the regulation. Even though we reject BATF's conclusion that the costs of ATF-66 are appreciably different in 1983 than they were in 1980, we have accepted its views that the rule's benefits are far less certain than they were believed to be. It was not arbitrary or capricious for the agency to conclude that the cost/benefit balance of ATF-66 has accordingly shifted to the point where the costs of the regulation are no longer justified.
 
 D. Existing Regulations
 
 28
 In its first attempt to rescind ATF-66, BATF concluded that no ingredient labeling was necessary because consumers were adequately protected by existing regulations, such as "standards of identity" which define what ingredients can be used in alcoholic beverages and FDA regulations requiring prior approval of such ingredients. 46 Fed.Reg. at 55,094. In reversing BATF, the District Court found that the agency had failed to explain why it was satisfied that existing regulations provided consumers with adequate information. CSPI I, 573 F.Supp. at 1177. The court gave preclusive effect to this ruling in CSPI III. Slip op. at 6-7, J.A. at 589-90.
 
 
 29
 We agree with the District Court that BATF has not explained how standards of identity and FDA approval can provide consumers with any necessary information about the contents of alcoholic beverages. BATF's mandate is not to protect the health of consumers but to provide them with "adequate information," yet the agency has not explained how the cited regulations provide any information to consumers. If the record had demonstrated that consumers desired ingredient information or that allergic consumers would benefit from disclosure of potential allergens, existing regulations would not obviate ingredient disclosure regulations, as evidenced by BATF's decision to require disclosure of specific ingredients. We therefore assign no weight to this rationale in assessing whether BATF has adequately explained the rescission of ATF-66.
 
 E. Address Label Option
 
 30
 BATF rejected the use of the address label option because "(1) there is little cost savings associated with this option, and (2) the quality and usefulness of the information which would be provided is even less than for ingredient listing on the label." 48 Fed.Reg. at 45,553. Both of these conclusions are reasonable and supported by record evidence. The record in ATF-66 contained little information on the address label option. The record now contains evidence that the address label option would entail many of the same one-time costs as labeling--because labels would have to be changed to contain the requisite language--and some of the ongoing costs. See, e.g., J.A. at 1492, 1527, 1581, 1652, 1694-98, 2271-72. Further, the information would be of limited utility because addresses are already required to be on labels and because of the lengthy time lag between purchase of the beverage and receipt of ingredient information. BATF properly considered alternatives to rescission by considering retention of the address label requirement and did not err in concluding that the address label option was not a viable alternative.
 
 
 31
 F. Case-by-Case Approach to Specific Ingredients
 
 
 32
 BATF not only considered but adopted an alternative to complete rescission by obligating itself to consider "the necessity of mandatory labeling of other ingredients on a case-by-case basis through its own rulemaking initiative, or on the basis of petitions for rulemaking." 48 Fed.Reg. at 45,555. The agency has already followed through on this commitment by mandating disclosure of an artificial color, FD & C Yellow No. 5, in the rulemaking rescinding ATF-66 and by conducting rulemakings on saccharin and sulfiting agents.[8] The decision to proceed case-by-case is based on BATF's conclusion, which is supported by the record, that the comments it received did not establish a need to disclose specific ingredients other than FD & C Yellow No. 5.[9] BATF acted within its authority in adopting a case-by-case approach to ensure that consumers receive "adequate information" about an ingredient once a health threat has been demonstrated.
 
 IV. CONCLUSION
 
 33
 BATF's efforts to explain its turnabout have hardly been exemplary, but the record developed, the explanation provided, and the alternatives considered[10] combine to meet the standard of reasoned decisionmaking. Although we reject some of the agency's stated rationales, enough of its reasoning withstands scrutiny to obviate a remand for further explanation. While we "may not supply a reasoned basis for the agency's action that the agency itself has not given ... [we may] 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' " State Farm, 463 U.S. at 43, 103 S.Ct. at 2866 (citations omitted). The path of reasoning leading to BATF's decision to rescind ATF-66 may still be discerned even after the rejected rationales are omitted: the record failed to establish that ingredient disclosure would provide useful information as to the actual contents of alcoholic beverages or would aid consumers seeking to avoid allergic reactions and so ATF-66--including the address label option--was unnecessary and unjustifiably costly. BATF's rescission of ATF-66 is affirmed and the decision of the District Court accordingly is
 
 
 34
 Reversed.
 
 
 
 *
 Sitting by designation pursuant to Title 28 U.S.C. Sec. 293(a)
 
 
 [1]
 Because an agency must be free to rectify errors by engaging in new rulemaking, courts reviewing the new rulemaking must be careful in giving preclusive effect to findings from prior reviews of the tainted rulemaking. Here, the District Court's decision was based in large part on the preclusive effect it gave to findings from CSPI I. CSPI III, slip op. at 5-7, 10-11, J.A. at 588-90, 593-94. We did indeed state in CSPI II that CSPI "ought to be left in the same position as if no appeal had been taken," 727 F.2d at 1166, and the Supreme Court has established that the government can be estopped from relitigating issues of law and fact in subsequent lawsuits involving the same party when it did not appeal the earlier decision, United States v. Stauffer Chemical Co., 464 U.S. 165, 173 & n. 6, 104 S.Ct. 575, 580 & n. 6, 78 L.Ed.2d 388 (1984). In Stauffer, however, the successive cases involved "virtually identical facts," id. at 173, 104 S.Ct. at 580, and in CSPI II we declared only that CSPI I could be given preclusive effect "should certain issues turn out to be identical," 727 F.2d at 1168 n. 6. Here, as in most cases in which an agency conducts a new rulemaking to rectify past errors, there is no such identity: there is a new record and a new statement of reasons. Rather than automatically granting preclusive effect to the findings of CSPI I, then, we must re-evaluate the earlier conclusions in light of the new rulemaking. See infra at 1002 & n. 6, 1003
 
 
 [2]
 We cannot agree with CSPI's contention and the District Court's conclusion that BATF's action violated the FAA Act. We have previously noted that the agency's "obligation [under Sec. 205(e) ] to ensure that disclosure is adequate squarely implicates discretionary judgment on the part of the Secretary." Wawszkiewicz v. Department of the Treasury, 670 F.2d 296, 300 (D.C.Cir.1981) (footnote omitted). Certainly, then, there is no plain meaning of the phrase "adequate information" which indicates Congress' intent as to whether the FAA Act either requires or prohibits ingredient disclosure regulations. Neither are the portions of the legislative history cited by CSPI and DISCUS much more illuminating on the issue of congressional intent. For example, a legislative history compilation cites testimony that regulations promulgated pursuant to Sec. 205(e) should tell the purchaser all of the important factors "about what was in the bottle." Federal Alcohol Control Administration, Legislative History of the Federal Alcohol Administration Act 66 (1935). While this passage indicates that BATF may mandate ingredient disclosure, it hardly demonstrates clear congressional intent as to the scope of disclosure which BATF may require
 BATF's conclusion that the Act vests it with a zone of discretion within which it can choose to require or not require ingredient disclosure, as necessary to provide consumers with adequate information, is thus consistent with that congressional intent which can be discerned. We accordingly acquiesce in the agency's interpretation of the general scope of its authority under Sec. 205(e). See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984).
 
 
 [3]
 CSPI and amicus curiae New York State Consumer Protection Board charge that BATF erred by not considering other polls on the degree of consumer interest in alcoholic beverage ingredient disclosure. The polls they rely upon were not, however, made part of the record although they were available during the comment period. BATF did not err in refusing to consider this extra-record evidence
 
 
 [4]
 Section 205(e) of the FAA Act authorizes BATF to promulgate regulations both to provide consumers with adequate information about the contents of alcoholic beverages and to prohibit statements which, irrespective of their truth or falsity, are likely to mislead consumers. 27 U.S.C. Sec. 205(e) (1982). BATF could thus consider whether the required disclosure would be misleading. We accord little weight to BATF's stated concern with the potentially deceptive effects of ATF-66, however, because the agency failed even to consider whether its case-by-case approach would be as or more misleading. Partial listings of additives might, for example, mislead consumers into believing that the listed additives are the only ones used in making the beverage
 
 
 [5]
 CSPI has pointed to record evidence, both scientific and anecdotal, indicating that ingredients present in alcoholic beverages can and do induce allergic reactions. See, e.g., J.A. at 1084-86, 1239-40, 1544-45, 1871, 1901-25, 1991-96, 2015-32, 2099-137. BATF acknowledged this evidence but noted that "most of the medical community ... stated either that the attribution of allergic reactions to alcohol beverage ingredients was inappropriate or that such cases were very rare." 48 Fed.Reg. at 45,551
 Evidence in the record indicates that basic ingredients--such as grains--used in distilled spirits, wine, and beer are substantially transformed during the processes of distillation and fermentation such that the allergy-inducing ingredients do not remain in the final product. See, e.g., J.A. at 1448-49, 1585, 1683-91 (distilled beverages); 1443, 1471, 1540 (wine); 1564-65, 1573-74, 2149 (beer). Additives, as opposed to basic ingredients, are added later in the process and so may not be as substantially transformed. See 48 Fed.Reg. at 45,556 (noting that FD & C Yellow No. 5 "is added after fermentation or distillation and thus has not undergone a substantial transformation"). There is record evidence, however, that only small quantities of additives, such as those used in the processing of wine, remain in the final product. J.A. at 1034-49, 1141-43, 1180-85, 2380-81. Because ATF-66 would not have required disclosure of such incidental additives as the clarifying agents and fining agents used in wine processing, 45 Fed.Reg. at 40,542, BATF could properly conclude that the earlier rule would not have addressed the problem of allergic reactions to such additives.
 BATF would have been on shaky ground in concluding that no potentially allergenic ingredients remain in alcoholic beverages--especially with respect to additives used in distilled spirits and beer, on which there seems to be no record evidence. The agency made no such blanket finding, however, concluding only that there is "a strained relationship between the initial ingredients ... and the ultimate contents ... [and] considerable medical and scientific dispute over the degree to which components of the initial ingredients may survive the production process to cause allergic reaction." 48 Fed.Reg. at 45,555. This qualified conclusion is amply supported by the record.
 
 
 [6]
 Because the agency's changed conclusion relied on new record evidence on the question of health effects, the District Court erred in giving preclusive effect to its finding in CSPI I that ingredients used in alcoholic beverages can cause allergic reactions. CSPI III, slip op. at 6-7, J.A. at 589-90; see supra at 999 n. 1
 
 
 [7]
 Agencies can consider the economic impact of their regulations, pursuant to executive orders such as the one relied on by BATF, when the underlying statute permits such consideration. See Professional Drivers Council v. Bureau of Motor Carrier Safety, 706 F.2d 1216, 1222 & n. 21 (D.C.Cir.1983). A court must examine the statute invoked in each case to ensure that it authorizes the agency to consider costs in carrying out its duties. International Brotherhood of Teamsters v. United States, 735 F.2d 1525, 1529 & n. 2 (D.C.Cir.1984). In this case, BATF is permitted to consider the costs of regulation in considering what constitutes "adequate information" for purposes of Sec. 205(e). See Wawszkiewicz v. Department of the Treasury, 480 F.Supp. 739, 746 & n. 16 (D.D.C.1979), reversed in part on other grounds, 670 F.2d 296 (D.C.Cir.1981); see CSPI I, 573 F.Supp. at 1174 (accepting the "eminent good sense" of Wawszkiewicz "because costs are always a factor in deciding the feasibility or practicality of a regulation")
 As BATF correctly acknowledged, "[t]he costs associated with a particular labeling requirement should not be determinative of whether information should be placed on a label." 48 Fed.Reg. at 45,552. Costs were not, however, the determinative factor in the agency's decision to revoke ATF-66. We cannot agree with the District Court's conclusion that "the entire fabric of [BATF's decision] is permeated with attention to matters of cost." CSPI III, slip op. at 11, J.A. at 594.
 
 
 [8]
 Both of these rulemakings were based on BATF's authority under Sec. 205(e) and cited the decision under review here. 50 Fed.Reg. 51,851, 51,851 (1985) (final rule on saccharin); 50 Fed.Reg. 26,001, 26,001-02 (1985) (proposed rule on sulfiting agents)
 
 
 [9]
 We note, however, that the record did contain a fair amount of conflicting information about the allergenic properties of sulfiting agents. See J.A. at 1991-2011, 2099-2137, 2276-2379. BATF's failure to explain why it did not mandate disclosure of sulfiting agents has, however, been remedied by its decision to conduct a separate rulemaking on this topic. See 50 Fed.Reg. 26,001 (1985)
 
 
 [10]
 BATF considered three alternatives: partial ingredient labeling as adopted in ATF-66, the address label option, and case-by-case disclosure (the alternative it chose to adopt). The agency could, of course, have considered other alternatives, particularly alternatives more sensitive to the fact that basic ingredients do not seem to survive distillation and fermentation intact but certain additives do. See supra at 1001 n. 5. This concern is, however, addressed at least in part by the agency's decision to require listing of specific ingredients shown to survive the distillation and fermentation processes and to pose health hazards. In addition, no alternatives designed to address this problem were suggested by commenters in the rulemaking proceeding