**INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO, et al., Plaintiffs,**

v.

**Elizabeth DOLE, Secretary of Labor, et al., Defendants,**

**Carol Quint, et al., Defendants–Intervenors.**

**Civ. A. No. 89–0027.**

United States District Court, District of Columbia.

Dec. 7, 1989.

878

Stephen J. Pollak, Frederick C. Schafrick and Laura S. Wertheimer, Washington, D.C., and Max Zimny, Jane Lauer Barker and Susan R. Daniel, New York City, for plaintiffs.

Sandra M. Schraibman and Raymond M. Larizza, U.S. Dept. of Justice, Washington, D.C., for federal defendants.

Jonathan B. Hill, Washington, D.C., and Nancy A. Daly and Wayne S. Henderson, Boston, Mass., for intervening defendants Carol Quint, et al.

Manuel M. Medeiros, Sacramento, Cal., who filed amicus papers on behalf of John K. Van de Kamp, Atty. Gen. of State of Cal.

## MEMORANDUM

GESELL, District Judge.

Section 11(d) of the Fair Labor Standards Act ("FLSA") authorizes the Secretary of Labor to "make such regulations and orders regulating, restricting, or prohibiting industrial homework as are necessary or appropriate to prevent the circumvention or evasion of and to safeguard the minimum wage rate ..." 29 U.S.C. § 211(d). Plaintiffs, claiming arbitrary and capricious action, sue the Secretary of Labor to obtain review of a Department of Labor (the "Department") Final Rule rescinding a previous total ban on homework in five industries—gloves and mittens, handkerchiefs, buttons and buckles, "nonhazardous" jewelry, and embroideries (the "five industries")—in favor of implementing a certification system for persons working at home in those industries. The Final Rule, published at 53 Fed.Reg. 45706, is now before the Court for review on cross-motions for summary judgment which have been fully briefed and argued. A group of New England homeworkers has intervened as defendants and has also briefed and argued the issue.

A ban on homework in the five industries, as well as in the knitted outerwear and women's apparel industries, was adopted by Department regulations in the early 1940's. In 1981, the Department by regulation rescinded the homework ban in the knitted outerwear industry, but the Court of Appeals vacated that rule as arbi-

trary and capricious in *ILGWU v. Donovan*, 722 F.2d 795 (D.C.Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984) (*"ILGWU"*). In 1984, the Department issued a new regulation, which again rescinded the homework ban in knitted outerwear but this time replaced it with a system for certification of employers in the industry. This rule was not challenged in court. Now the Department, by the Final Rule at issue here, seeks to extend the certification system, with certain alleged improvements, to the five industries.[1]

For the reasons discussed below, the Court grants the defendants' motions for summary judgment.

## I. *Background*

The FLSA, enacted in 1938, established minimum wage, overtime pay and child labor standards aimed at achieving "in those industries within its scope, certain minimum labor standards." *ILGWU*, 722 F.2d at 801.

Department investigations in the early 1940's found high rates of violation of minimum wage, maximum hour, and child labor provisions among homeworkers in the seven industries mentioned above. Homeworkers in those industries are normally paid by piece rate rather than hourly wages. The Department found four primary impediments to enforcing the FLSA among homeworkers in the seven industries: first, the difficulty in identifying homeworkers; second, the difficulty in securing accurate records of hours worked at home; third, the difficulty in detecting and remedying FLSA violations with respect to homeworkers; and fourth, the lack of sufficient resources to enforce the FLSA with respect to homeworkers. The Department concluded that even extremely diligent enforcement efforts could not prevent FLSA violations among homeworkers, and, accordingly, it adopted rules banning homework, subject to a few exceptions, in the

seven industries. *ILGWU*, 722 F.2d at 801–04. Persons who were elderly, disabled or responsible for the care of an invalid could apply for an exemption certificate to work at home. Additional homework bans or limitations in these industries are imposed by the laws of some 20 states.[2] Federal law permits homework in all other industries.

In 1981, the Department proposed rescission of the homework ban in all seven restricted industries. 46 Fed.Reg. 25108 (1981). However, the final rule adopted lifted the ban in the knitted outerwear industry only. 46 Fed.Reg. 50348 (1981). The rule was challenged in court, and the Court of Appeals concluded that the rescission of the homework ban was arbitrary and capricious, because the Department had failed to consider alternatives to the complete elimination of restrictions and because the record did not support the conclusion that FLSA compliance could be maintained without the homework ban:

> [T]he Secretary argues that because of increased acceptance of the minimum wage, and the developing expertise of his enforcement officials, a "concerted compliance program" by the Department will insure effective enforcement of the Act. The Secretary's statements are unsupported by the record and, in effect, ask us to accept the Secretary's conclusory assurances and to assume that the impediments to enforcement of the Act which were considered 'inherent in the home work practice' in 1942, have disappeared with the passage of time.
>
> We do not believe that the Secretary was free to ignore the specific impediments identified in the 1942 findings, and we also may not ignore them.... Because of the Secretary's failure to consider adequately factors identified in this subsection, his judgment that removing restrictions would not prevent effective

---

1. On December 30, 1988, the Department published an advance notice of rulemaking indicating that it was considering altering the present ban on homework in the one remaining industry, women's apparel. 53 Fed.Reg. 533444. No proposed rule has been published to date.

2. The new certification system does not undermine state homework bans; the Final Rule provides that the Department will not certify any employers in states whose laws ban homework in the relevant industries. 53 Fed.Reg. 45723.

enforcement of the Act was arbitrary and capricious and cannot be upheld. 722 F.2d at 825–26 (citation omitted). The Court ordered that the restriction against homework in knitted outerwear "be reinstated and remain in effect unless properly modified pursuant to 'reasoned decisionmaking' consistent with the opinion of this court." *Id.* at 828.

In 1984, the Department initiated another rulemaking, which resulted in a new rule rescinding the homework ban in knitted outerwear but this time replacing the ban with a certification system. Under this system, an employer who wishes to hire homeworkers lawfully must obtain a certificate from the Department. The rule was not challenged in court; the International Ladies' Garment Workers' Union (ILGWU) told the Department that it viewed the certification system as an experiment, and the union closely monitored the program by requesting and obtaining Department documents.

On August 21, 1986, the Department proposed to extend the certification system to the other six restricted industries. 51 Fed. Reg. 30036. At that time, the Department stated that its "enforcement experience in knitted outerwear has demonstrated the effectiveness of the certification program in improving the Department's ability to enforce the FLSA and in fostering FLSA compliance." 51 Fed.Reg. 30038.

The Department received thousands of comments on its proposal. The ILGWU comments asserted that the certification system did not overcome the impediments to FLSA enforcement identified by the Department in the 1940's and that the Department's own records contradicted the claim that the certification system had been effective.

The Department reacted to the ILGWU's comments by assigning Alfred Perry, a Department official, to review the comments. Perry produced an internal memorandum that acknowledged major weaknesses in enforcement of the certification system. Subsequently, the Department held regional training conferences on homeworker investigations and developed a training pack-

et to guide Department compliance officers in enforcing the FLSA among certified employers and their employees.

In March 1988, the Department published a revised homework proposal and reopened the record for comments. 53 Fed. Reg. 10342. The Department acknowledged the validity of some of the prior comments as to the ineffectiveness of enforcement of the knitted outerwear certification system and announced that it would incorporate a number of new enforcement provisions. The Department also dropped its proposal to ban homework in the women's apparel industry and with respect to certain "hazardous" jobs in the jewelry industry.

The ILGWU was once again one of many commentators urging retention of the total ban. This time, it argued that despite the 1987 training conferences, there was still significant evidence that the certification program was not achieving adequate FLSA compliance in the knitted outerwear industry.

On November 10, 1988, the Department published the Final Rule, 53 Fed.Reg. 45706, largely adopting the March 1988 proposal. On January 5, 1989, plaintiffs filed this action.

## II. *Standard of Review*

The Court has jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701 *et seq.* The issue of whether there is a cause of action and standing for all plaintiffs—labor organizations, manufacturers associations, and state officials—was clearly settled in favor of plaintiffs in the prior litigation, *see ILGWU,* 722 F.2d at 805–812, and although this litigation deals with the rule as applied to five industries instead of one, standing is not contested here.

The Department does assert that the issue of whether protection of the minimum wage in an industry requires the banning of homework "is a policy making function entrusted by statute to the Secretary of Labor" and therefore "the final rule revising and expanding the certification system

is entitled to legislative effect and *must* be upheld" (emphasis added). That contention was clearly rejected by the Court of Appeals in *ILGWU*. Although the Department's policy judgment is entitled to substantial deference, the Court has a responsibility to determine whether the Department's decision is sufficiently supported by the rulemaking record.

This standard of review, codified at 5 U.S.C. § 706(2)(A), is well understood; an agency action is unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In *Motor Vehicle Manufacturers Association v. State Farm*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983), the Supreme Court outlined the parameters of APA review:

> The scope of review under the "arbitrary and capricious standard" is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, "uphold a decision of less than ideal clarity if the agency's path may

reasonably be discerned" (citations omitted).

Accordingly, under this standard, the sole issue before the Court is whether the Department provided a reasoned basis, grounded in the record, for its finding that implementation of the certification system is, on balance, a better means of enforcing the FLSA than was the total homework ban.[3]

Plaintiffs assert that the Department has flunked the tests of *Motor Vehicle Manufacturers Assn.* and *ILGWU* because the evidence in the rulemaking record does not permit the Department to reasonably conclude that the lifting of the total homework ban in favor of the certification system would enhance FLSA enforcement.

III. *Requirement that decisions be reasoned based on the record*

The Court, however, concludes that the Court of Appeals decision in *ILGWU* does not control this case, and that the teachings of *Motor Vehicle Manufacturers Assn.* and other cases require the Court to uphold the rule. A review of the record indicates that the Department developed the present certification system after significant analysis and experience, that it adequately justified its decision with reference to the record, and that it genuinely considered alternative policies.

The Department believes that the homework ban has fostered an underground economy beyond government control and that the certification program in knitted outerwear improved FLSA enforcement by increasing identification of homeworkers and gaining cooperation of some homeworker employees. 53 Fed.Reg. 45715. Moreover, the Department argues, to the extent that the ban was effective in preventing minimum wage violations, it will remain as effective with respect to uncertified employers, who will still be prohibited from hiring homeworkers.

---

**3.** The Statement of Basis and Purpose accompanying the Final Rule asserts that the certification system is desirable for the additional reason that it will permit greater flexibility for many United States workers, 53 Fed.Reg. 45707–08, 45713. However, the Department, surprisingly, agrees with the plaintiffs that that factor is not pertinent to this APA review.

APA review, as articulated in *Motor Vehicle Manufacturers Assn.*, does not permit the Court to substitute its judgment for that of the Department as to its ultimate conclusion that the certification system is superior to the total ban in enforcing the FLSA. Rather, a court's task is to determine whether the Department's decision is a reasoned one based on the evidence in the record.

■ The decision under review represents a significant change in strategy for dealing with a problem that has remained essentially unchanged since the Department addressed it in the 1940's. However, the law is clear that an agency may change course "with or without a change in circumstances." *Motor Vehicle Manufacturers Assn.*, 463 U.S. at 57, 103 S.Ct. at 2874, *quoting Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). *See also Center for Science in the Public Interest v. Department of the Treasury*, 797 F.2d 995, 999 (D.C.Cir.1986). Accordingly, if new analyses or experiences, such as the Department's experience with the certification system in knitted outerwear, provide a basis for a new agency action, a court may uphold the action even though the underlying problem has not materially changed.

A. Decision-making dealing with enforcement

The decision under review, moreover, concerns the future effectiveness of enforcement programs in light of what all parties agree are scarce enforcement resources. Although the court in *ILGWU* held that the fact that an agency rule is based on predictions about the future does not insulate that judgment from "arbitrary and capricious" review, 722 F.2d at 821–22, it also acknowledged that a reviewing court must "respect an agency's superior position to make judgments involving elements of prediction." *Id.* at 822. *See also FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 813–14, 98 S.Ct. 2096, 2121, 56 L.Ed.2d 697 (1978); *Natural Resources Defense Council v.*

*SEC*, 606 F.2d 1031, 1058–59 (D.C.Cir. 1979).

■ The Court of Appeals for this circuit has acknowledged the need to defer to agency judgment where the issue is the allocation of enforcement resources. In *Building & Construction Trades' Department, AFL–CIO v. Donovan*, 712 F.2d 611, 629 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984), the court considered a challenge to Labor Department regulations issued pursuant to the Davis–Bacon Act and the Copeland Anti–Kickback Act. The plaintiffs argued that the regulations would not produce effective enforcement of the statutes, but the court held:

> [O]ur deference to [the Secretary's] choice is properly near its greatest when his decision turns on the enforceability of various regulatory schemes. He and not the courts can best balance such shifting dynamics as the incentive to violate the rules, the willingness of construction workers and competitors to complain, the ability of his inspection staff to respond and to discover violations, and the effectiveness of the sanctions....

The court further noted that the Secretary had concluded on the record that the previous enforcement scheme was inadequate, and "the fact that the past practice has not been entirely successful tends to predispose a reviewing court to allow the Secretary to try to find a different scheme...." *Id.* This analysis is apt here. Past practice has not ended FLSA violations in the five industries. Moreover, whereas in *ILGWU* the Department had simply dropped the ban without replacing it with a new enforcement plan, here the Department has "[tried] to find a different scheme" and has already experimented with that scheme in another industry.

It is important to stress that the Section 11(d) of the FLSA empowers the Department to restrict homework only as necessary to enforce the minimum wage; it leaves to the Secretary, acting consistently with the requirements of the APA, the determination as to how much restriction on homework is necessary. As the Court

of Appeals stated in *American Trucking Assn., Inc. v. ICC,* 697 F.2d 1146, 1153 (D.C.Cir.1983), "in designing the most appropriate means to enforce the law, agency discretion is at its zenith and judicial power at its nadir."

There must, of course, be limits to this deference, lest the government abandon all factfinding regarding the past in favor of questionable predictions about the future; in fact, "the predictive nature of [agency] findings does not, by itself, alter [the] basic standard of review" in an APA case. *Brae Corporation v. United States,* 740 F.2d 1023, 1039 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1069, 105 S.Ct. 2149, 85 L.Ed.2d 505 (1985).

**B. Defects in the 1981 Final Rule**

The limits of deference in a case involving agency prediction were stretched in *ILGWU,* where the Court of Appeals found that the Department had failed to give adequate consideration to factors relevant to the Department's ability to enforce the FLSA without homework restrictions. 722 F.2d at 822–23. The 1981 Final Rule at issue in *ILGWU* simply rescinded the ban in knitted outerwear with a 2–page statement of basis and purpose and without adequate consideration on the record of the Department's ability to enforce the FLSA in the industry without the ban.

Although there were signs that the Department put some thought into its decision—for example, in response to the comments to its 1981 proposal, the Department cut back from seven to one the number of industries for which it would lift the homework ban—the court in *ILGWU* found significant evidence that the Department's 1981 decision was not adequately reasoned. The court characterized as "conclusory" the Department's assurance that FLSA enforcement in a deregulated knitted outerwear industry would succeed and found that the Department "ignore[d] the specific impediments" to FLSA enforcement identified in the 1940's. *Id.* at 824–25.

The Department justified the 1981 lifting of the ban in knitted outerwear by stating that "it appears that homeworkers will comprise only a small percentage of the approximately 63,000 production employees in this industry," compared with an estimated 20 percent when the restrictions were established in the early 1940's, *Id.* at 805; as the court in *ILGWU* pointed out, the Department failed to consider seriously the possibility that the total elimination of the ban in knitted outerwear would increase the number of homeworkers.

The court in *ILGWU* further noted that the evidence in the record supporting the 1981 rule came "primarily" from Vermont home knitters who stated that they earned more than the minimum wage. 722 F.2d at 818–19.

**C. The 1988 Final Rule**

■ In this case, in sharp contrast, the agency has not rescinded the ban but has kept it in place for all firms except those that obtain Department certification. Therefore, the question is not whether the Department could reasonably conclude that certification and regulation for all firms is better than a total ban in enforcing the FLSA, but rather whether it could reasonably conclude that certification for firms that come forward and meet the requirements, accompanied by continuation of the ban for all other firms, is superior to the total ban. To answer that question, the Department had to consider whether the required diversion of enforcement resources to the certification system would undermine enforcement of the ban among uncertified firms. It is appropriate for the court, as the court did in *Building and Construction Trades Dept.,* to give strong consideration to the Department's view of what methods will best enforce the laws.

But the evidence and justification for the present rule is far more extensive than mere prediction. Unlike the 1981 rule, the 1988 rule rests on experience.

The Department has been considering and experimenting with enforcement mechanisms under a certification system since at least 1984 in an industry, knitted outerwear, in which enforcement is not shown on this record to be significantly easier than in the five industries at issue here.

The Department has also explained in some detail why it believes the certification system will provide better enforcement of the FLSA than the prior ban in the five industries.

The Department's 1986 published proposal indicated its findings that the knitted outerwear certification system compared favorably to the total ban in terms of monetary violations, compliance with recordkeeping, homeworkers identified, and investigations performed. 51 Fed.Reg. 30038–39.

The Department's 16–page statement of basis and purpose published with the 1988 Final Rule, 53 Fed.Reg. 45706, discusses the history of the homework ban, the reasons for relaxing the ban in the five industries, the Department's experience with the knitted outerwear certification system, the reasons why the Department believed the revised certification system would lead to better enforcement, the Department's consideration of alternatives to the certification system chosen, and the Department's responses to comments submitted during the rulemaking process.

The statement of basis and purpose made specific reference to the four primary factors which led to the imposition of the homework ban in the 1940's and indicated how these factors are met by aspects of the improved certification program:

Certification, according to the statement, addresses the first factor, identifying homeworkers, by encouraging homeworkers and their employers to come forward. 53 Fed.Reg. 45719.

Homeworker handbooks created by the Department will enable workers to keep accurate time records, thus addressing the second factor, 53 Fed.Reg. 45720, and the Department asserted in the statement of basis and purpose that the knitted outerwear certification effort showed that most employers "come into compliance or substantial compliance with the recordkeeping requirements after an initial investigation and explanation of the requirements by Wage–Hour compliance officers." 53 Fed. Reg. 45710.

The third factor, noncompliance with the FLSA and particularly the minimum wage is addressed, according to the Department, because certified employers "are generally more likely to comply with the FLSA's requirements, and, in the event of violations, will be more responsive than other homeworker employers in achieving future compliance and paying back wages in order to retain their certificates." 53 Fed.Reg. 45720.

As to the fourth factor identified in the 1940's, the drain on department enforcement resources required by homework, as opposed to factory, investigations, the statement of basis and purpose notes that enforcing the total ban also imposes a significant burden on its resources. 53 Fed. Reg. 45720.

Additional support for the conclusion that the Department's decision was reasoned based on the record comes from the investigation and subsequent March 4, 1987, memorandum by Alfred Perry, Deputy Area Regional Administrator for Wage and Hour in Atlanta, in response to the ILGWU's 1986 comments on the Department's proposal to lift the homework ban in the five industries. Although the Perry memorandum was not released or referred to in the statement of basis and purpose published with the 1988 Final Rule, its conclusions were to some extent incorporated into the statement. 53 Fed.Reg. 45715–16. Moreover, " 'if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, [a court] will make the reference.' " *Miller v. Lehman,* 801 F.2d 492, 497 (D.C.Cir.1986), *quoting Environmental Defense Fund, Inc. v. EPA,* 465 F.2d 528, 537 (D.C.Cir.1972).

The Perry memorandum acknowledged the truth of the ILGWU's claim as to the inadequacy of enforcement investigations among certified knitted outerwear firms but concluded that the enforcement problems "are more our failure to utilize data gathered than an inability to gather that data." Perry also attempted to demonstrate that many of the union's criticisms

were distorted or misleading. Moreover, he suggested a number of potential avenues for improvement, and the subsequent training sessions and packets appear to have reflected his suggestions.

In *Brae Corporation,* 740 F.2d at 1039, which involved Interstate Commerce Commission decisions to deregulate railroad boxcars, the court stated:

> [W]hen the facts relied upon by the Commission are insufficient, by themselves, to support its ultimate conclusion with certainty, it must identify the uncertainties, *see ILGWU,* 722 F.2d at 814 n. 33, explain why it acted prior to "engaging in a search for further evidence," [*Motor Vehicle Manufacturers Assn.*], 103 S.Ct. at 2871, and state what considerations led it to resolve the uncertainties as it did.

*Id.* The court in *Brae Corporation* concluded that a Commission decision that relied on predictions had met this test. The Court reaches the same conclusion with respect to the Final Rule under review here. The Department identified uncertainties and the considerations on which it relied in resolving the uncertainties throughout the statement of basis and purpose in discussing and addressing the criticisms put forth by the ILGWU and others. Moreover, the Department's conclusion that its experience with knitted outerwear certification suggested that certification would enforce the FLSA better than a total ban is an adequate explanation of why it acted now without a further search for evidence.

D. New enforcement provisions

The Department also responded to comments critical of the knitted outerwear certification experience by modifying the system with a number of provisions designed to strengthen enforcement. The plaintiffs respond that the new provisions do not cure the defects in the rule because the Department's decision to adopt it is based too heavily on speculation as to the effectiveness of the new provisions, which, according to the plaintiffs, will be ineffective.

Under the new provisions, the Department will investigate employers "promptly" after the issuance of a certificate. Employers must apply for renewal of their certifications every two years. Employers who apply for certification or recertification must provide the employer with a list of names, addresses, and languages of homeworkers employed or expected to be employed. The plaintiffs argue that the renewal requirement will be ineffective due to the Department's consistent inability to identify homeworkers and to determine whether other family members, especially children, are performing homework without being listed by the certified employer.

Homeworker handbooks, introduced at the start of the knitted outerwear certification program, have been revised to, among other things, provide time sheets that allow the homeworker to log in and out several times in the course of a single day, thus reflecting the reality of frequent interruptions in the work of many homeworkers. The plaintiffs point out that the record shows that knitted outerwear homeworkers admitted to compliance officers that they "guessed" their hours worked in filling in the old handbooks. The plaintiffs further argue that the new handbook cannot eliminate the possibility that homeworkers will minimize their hours for fear of getting fired.

The employer must also make various written certifications to the Department assuring compliance with the FLSA and with the handbook requirements. The plaintiffs assert that the record indicates that certified knitted outerwear employers who agreed to comply with the recordkeeping requirements were frequently found upon reinvestigation to be in violation of those requirements.

The new certification program also requires employers to establish, through time studies or other methods, "piece rates" to better determine whether homeworkers paid by the item are receiving the hourly minimum wage. The plaintiffs point out that the Department has provided no guidance to employers as to how to conduct time studies or use other methods, and thus there is no basis to conclude that

employers can or will establish adequate piece rates.

As under the previous knitted outerwear certification regime, the ultimate sanction in the new regulations is revocation of certification. Revocation of up to three years is mandatory for serious or repeated violations. Revocation for three years is mandatory where an employer fires or discriminates against a homeworker for complaining about violations or otherwise assisting in FLSA enforcement. Revocation is permitted whenever the Department finds that employment of homeworkers is likely to led to violations. The plaintiffs respond that the potential threat of revocation failed to ensure compliance under the knitted outerwear certification system.

The new regulations additionally provide for new civil monetary penalties for violations of the FLSA, homeworker regulations, and employer assurances, in addition to the civil and criminal penalties already in force. The plaintiffs respond that the new sanctions are relatively modest compared with sanctions already in effect, and that the Department has rarely imposed sanctions against homework employers.

The Department is also authorized to require a certified employer to post a cash bond or security of up to $2500 for each homeworker to assure that a homeworker will receive back pay in the event of FLSA violations. The Department says it will impose the bonding requirement where it has reason to doubt that an employer will comply with the FLSA or that an employer will be able to pay back wages in the event the Department finds violations or where an employer has previously had a certification denied or evoked. The plaintiffs respond that these prerequisites for bonding "are so steep that it is unlikely that bonding will be imposed on a significant number of employees."

As noted above, the Court's function in reviewing this matter is not to determine, in light of all the evidence, which side has the better of the argument as to the future effectiveness of the new enforcement provisions. Instead, the Court must "respect an agency's superior position to make judg-ments involving elements of prediction," *ILGWU*, 722 F.2d at 822, and uphold such judgments if the agency has "articulate[d] a satisfactory explanation for its action including 'a rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturers Assn.*, 463 U.S. at 43, 103 S.Ct. at 2866.

E.  The Department's duty to consider alternatives

■  Plaintiffs also argue that the Department violated APA standards by failing to consider alternatives to adoption of the certification system. Although an agency is not required to consider all policy alternatives in making a decision, it must consider options that are not "uncommon and unknown," *ILGWU*, 722 F.2d at 817, *quoting Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 551, 98 S.Ct. 1197, 1216, 55 L.Ed.2d 460 (1978), and cannot engage in an "artificial narrowing of options." *ILGWU*, 722 F.2d at 817, *quoting Pillai v. Civil Aeronautics Board*, 485 F.2d 1018, 1027 (D.C.Cir.1973). *See also Motor Vehicle Manufacturers Assn.*, 463 U.S. at 51–57, 103 S.Ct. at 2870–74.

The record indicates that the Department did consider, address and, in the statement of basis and purpose accompanying the Final Rule, reject three alternatives to the present system: removing the restrictions on homework in rural areas while retaining them in urban areas, expanding the conditions for granting certificates based on hardship, and transferring homework enforcement responsibilities to the states. 53 Fed.Reg. 45720–21. By contrast, in *ILGWU*, the court found that the first two of those same three alternatives had been proposed to the Department but that the Department had "made no claim that these alternatives received consideration" and that there was a "complete failure" to address alternatives and explain a decision to reject them.

Here, plaintiffs' assert that the Department should have, but did not, consider the additional possibility of trying out the new certification system enforcement measures

in the knitted outerwear industry first before lifting the ban in the five industries. The Department responds that the plaintiffs should be estopped from making this argument because they failed to suggest this alternative in their comments. The plaintiffs counter that this alternative was "obvious."

Assuming *arguendo* that the estoppel argument is without merit, the Court nevertheless concludes that the option of testing the improved certification system in knitted outerwear prior to extending certification to other industries was neither obvious nor, in fact, the kind of policy option an agency is required to address in a rulemaking procedure. In contrast to the rural/urban or hardship certification options, the option at issue here concerned an approach to developing evidence rather than a substantive judgment as to an ultimate policy. Agencies cannot be required to dream up and address every option for clinical or field testing of its policies prior to implementation, especially where a well-organized opposition has not suggested the option.

F. The Department's alleged failure to enforce

Plaintiffs advance an additional argument that might potentially distinguish this case from past cases involving predictions about enforcement; the ban, plaintiffs contend, has been ineffective because the Department "has not tried to enforce the ban in a meaningful fashion." Indeed, plaintiffs point out that from 1975 to 1981, the Department conducted only 75 to 80 homeworker investigations nationwide in all industries. From 1981 to 1987, the Department conducted about 485 investigations of 440 employers of homeworkers in the six industries (other than knitted outerwear) in which the total ban remained in effect. Of the 440 employers investigated, 99 percent

were found to employ homeworkers. The Department took no action against 89 percent of those other than to obtain an agreement of future compliance; the other 11 percent were referred to a Regional Solicitor's Office for possible legal action. The Department reinvestigated only 39 of the 386 employers who had gotten off with a promise or with no Department action at all; of those, 35 were still illegally employing homeworkers. Nevertheless, the Department only referred eight of those to the Solicitor's Office; against the other 27 the Department asked for another agreement or nothing at all.

As noted, the plaintiffs' conclusion about this seemingly low level of activity is that the Department has not tried to enforce the ban. The Department, on the other hand, suggests that the failure of enforcement under the total ban approach showed that the approach is inherently incapable of reaching a residual underground homework sector in these industries.

Plaintiffs also argue that the certification experience in knitted outerwear revealed another shortcoming: by heavily concentrating resources on investigating certified employers, the Department let the FLSA go largely unenforced among uncertified knitted outerwear employers.[4]

The conclusion the Court draws from this debate is that the Department has historically been either uninterested in or unable, because of fiscal constraints, to achieve full enforcement of the FLSA among homeworkers, whether by ban or by certification. The Court is not asked to address this situation, nor are the courts generally in the business of ordering or directing funding of law enforcement efforts.

If the Court acceded to plaintiffs' request to void the Final Rule, presumably the Department would return to the somewhat lax level of enforcement of the total

---

**4.** From December 1984 through April 1988, the Department investigated only 38 non-certified knitted outerwear employers believed to be using homeworkers. Nine of those employers were in New York State, and plaintiffs assert that New York officials believe that "a large number" of the 460 knitted outerwear employers in New York were illegally employing homeworkers. Twenty of the 38 investigations were

generated by complaint, and although 37 of the 38 were found in violation of the homework ban, in 15 cases the Department did nothing but obtain a promise by the employer to comply, and only 4 of those 15 firms were reinvestigated. The Department found that twelve of the 37 violators owed back wages, but the owners paid or agreed to pay only six percent of the wages owed.

888

homework ban in the five industries, thus negating the stated goal of this lawsuit, i.e. assurance that the requirements of the FLSA will be met.

It is plausible that the Department's decision to lift the ban was motivated by its sympathy for certain constituencies, such as that represented by the intervenors, or a certain political philosophy, and not purely by a clinical decision as to the best means of enforcing the FLSA in the five industries. By the same token, it is plausible that the plaintiffs' opposition to the rule is motivated not simply by a disagreement over how best to enforce the FLSA but also by concerns of various constituencies about the threat of economic competition from homeworkers and firms employing them.

The Court's role is not to referee this dispute or to speculate on how it has shaded the parties' debate on the meaning of the evidence in the record. Clearly, and by the Department's own admission, the record indicates that the knitted outerwear certification system has demonstrated serious shortcomings. Nevertheless, the Department could reasonably conclude based on the record and in light of its experience with knitted outerwear that given limited enforcement resources, adoption of the certification system, with its new enhancements, would improve FLSA compliance in the affected industries compared with the present total ban.[5]

## IV. *Conclusion*

The concerns about permitting homework in the five industries are no doubt valid; the evidence is strong that the conditions present in the 1940's regarding the exploitation of homeworkers have not disappeared. Nevertheless, *ILGWU* does not control this case. *ILGWU* dealt with an effort to simply eliminate the homework ban in an industry without giving meaningful consideration to the consequences. In

this case, the Department promulgated a rule after nearly a decade of analysis and experience and comments by critics. The rule maintains the homework ban in the five industries except with respect to firms that seek Department certification and permit Department monitoring. It reflects a reasoned consideration of alternatives. It was modified in light of experience and suggestions received and developed during rulemaking. It may well encourage homeworkers and their employers to come forward and comply with the FLSA. States that disagree with the Department's conclusion remain free to ban homework in those industries. Plaintiffs have pointed to evidence that the Department has failed to vigorously enforce the total homework ban, but given the scarce resources available and the deference the Court owes the Department in its predictions as to what enforcement schemes will succeed, the Court concludes that the Department made a reasoned decision, based on the record, that a certification system would be superior to a total homework ban in enforcing the FLSA among homeworkers in the five industries.

---

5. That the Department made a reasoned decision is further evinced by its unwillingness to eliminate the total ban for all six industries. In response to public comments, the Department decided not to lift the ban and extend the certification system to women's apparel and "hazardous" jewelry manufacturing. 53 Fed.Reg. 10346. While the decision with respect to haz-ardous jewelry reflected concerns about dangerous operations in the home, the women's apparel decision reflected a desire on the Department's part to proceed cautiously with respect to this larger industry, while going forward in the other five industries, whose sizes are comparable to that of knitted outerwear.